585 So.2d 324 (1991)
CITY OF TARPON SPRINGS, a Florida Municipal Corporation, Appellant,
v.
TARPON SPRINGS ARCADE LIMITED, f/k/a Southeast Capital Associates Four, Ltd., Appellee.
No. 90-01731.
District Court of Appeal of Florida, Second District.
July 26, 1991.
Rehearing Denied September 19, 1991.
*325 Dennis L. Repka and Thomas C. Jennings III of Dennis L. Repka, P.A., Clearwater, for appellant.
Herbert Elliott, Tarpon Springs, for appellee.
CAMPBELL, Acting Chief Judge.
Appellant, City of Tarpon Springs, seeks reversal of a final judgment which awarded damages to appellee, Tarpon Springs Arcade Limited. Appellee was awarded a refund of impact fees assessed by appellant pursuant to chapter 20-1, City Code of Tarpon Springs. The trial judge in these proceedings entered a very comprehensive, well-thought-out and well-reasoned final judgment. We, therefore, choose to set forth in this opinion the final judgment in its substantial entirety. We approve the findings and conclusions found therein:

"Findings of Fact:

"In September, 1987, Plaintiff filed this cause, seeking a declaratory judgment as to the method or manner in which the Defendant City was applying its Water and Sewer Impact Fee Ordinance under Section 20-1 of the Municipal Code of the City of Tarpon Springs, Florida.
"Upon evidence received and admissions on stipulations in the Court file and proceedings had, the Court finds:
"(a) Neither the authority to enact the Ordinance nor the fact of its enactment are in issue.
"(b) Plaintiff is the owner of the affected property which is a structure consisting of approximately 33,700 square feet of interior space that has recently been remodeled from its original 1920-era usages.
"(c) A single water meter and sewer connection provide the structure with service.
"(d) In 1976, when Defendant adopted the Ordinance in question, the Arcade had a water unit factor and a sewer unit factor of not less than 35.2 for each such service.
"(e) The unit factor referred to is otherwise known as the `equivalent residential unit' which is the factor of 1.00 used to determine the relative impact of a structure on the system.
"(f) While the interior of Plaintiff's building has undergone major renovation, no significant change was made to the water and sewer connections that had continuously served the structure since the 1920's.
"(g) No evidence was adduced to show any substantial alteration or improvement to either the water system or sewer system in even the vicinity of this property.
"(h) There was no evidence to show that under any permitted uses that the structure here as remodeled ever would in fact equal or exceed the sum total of the original equivalent impact that existed prior to the enactment of the Ordinance, but such fact was not the lynch-pin [sic] of this case.
"(i) As of all times material to this action, the evidence shows that the cumulative summary of all portions of the property occupied by tenants subsequent to the remodeling to date does not yet equal the admitted aggregate of equivalent unit factors for the structure.
"(j) The problem causing the advent of this litigation is the insistence of the building official in using her own "unordained" method to compute credits, if any, treating the structure piecemeal, square foot by square foot, rather than as a single overall structure.
"(k) Since the Ordinance does not by its terms undertake to direct or specify the guidelines, the only logical application to be applied according to the greater weight of the testimony would be to treat the structure as a single unit and to apply credits through actual use computations until such time as, in fact, it is apparent that such new or extended use rises to the level warranting the imposition of the prescribed fee for such impact, be it water or sewer or both.
"(l) That as a matter of fact and law, the charging or imposition of an impact fee that has no nexus or logical bearing on an actual impact would be a tax thus imposed without regard to the name which the officer seeks to call it.
*326 "(m) The method used by the officer in the case at bar is an arbitrary and capricious application of factual determination and as a practical matter can and does in effect make an assumption of an impact in fact when none exists. Excess or unused credits for former square foot increments are lost to the owner under the official's square foot computation method and further, arbitrary exactions result in her determination of current uses where she finds no credit due.

"Conclusions of Law:

"1. The within case is a classic illustration for use of the declaratory judgment procedure and the Court finds there is an actual bona fide controversy between the parties; there is a clear and present need alleged and proven for the resolution of the dispute. Plaintiff has brought itself within the requirements of F.S. 86.011 and 86.021. Neither party has requested trial by jury of any issues in the cause.
"2. There is no assault in the present case upon the fundamental authority of the municipality to enact the Ordinance nor to question the amount of fees chargeable under Section 20.1. The question of law involved therefore is the validity of the acts and actions of the officer in endeavoring to apply the Ordinance under the highly specialized facts of this case.
"3. Where the legislative branch, in its official capacity, makes determinations, courts are and should be very cautious in review; but there is a wide difference between the determination by the legislative officials and actions of those acting under delegated powers. See by analogy cases on special assessments and 48 Fla.Jur.Sec. 20, page 29, Special Assessments.
"4. The Court believes that the late case of Brown v. Apalachee Regional Planning Council (Sup.Ct.) 15 FLW(s) 244, decided April 26, 1990, [560 So.2d 782 (Fla. 1990)] is applicable and controlling authority in the within cause.
"5. If a fee is charged that has no nexus or logical bearing on an impact then it would amount to a tax without regard to the name that was assigned to it.
"6. Quoting from Brown, 15 FLW 244, 245 [560 So.2d at 784]:
`The specificity of the guidelines will depend on the complexity of the subject and the "degree of difficulty involved in articulating finite standards". * * The test in determining the sufficiency of guidelines is whether they are adequate "to enable the agency and the Courts to determine whether the agency is carrying out the legislature's intent" (citations omitted). Without sufficient standards, the agency becomes "the lawgiver rather than the administrator of the law".'

"Declaratory Judgment

"Few principles are better established in the Constitution of Florida than is the prohibition demanded by Article II, Section 3, which provides that no branch of government shall exercise powers belonging to another.
"Applied here, this Court has no right to second-guess nor substitute its judgment in proper areas of discretion reserved for the duly elected or appointed members of the City of Tarpon Springs. To be a proper area free from the supervisory duty of the Court, the exercise of those powers of government exercised by the executive or legislative branches must be in keeping with constitutional rights of all concerned. On the other hand, however, delegation of power to legislate cannot be sustained especially where there are no parameters or guidelines established so that the agency becomes the lawgiver rather than the administrator. See Askew v. Cross Key Waterways, 372 So.2d 913, 925. This fault is present as to Plaintiff in Code of the City as applied to allocation of credit in this particular structure as distinguished from the City as a whole.
"The City of Tarpon Springs, by Chapter 20 of its Code, imposed an impact fee upon `new or expanded' water and sewer service customers. Copy of said Ordinance was received in evidence as Plaintiff's Exhibit 7.
"The problem at bar arises from the fact that said Ordinance fails to direct the building official as to the method or manner in which credits are to be allowed or applied in determining whether there is or is not a *327 fee due for the new or expanded use of a remodeled structure of Plaintiff.
"It is undisputed that since the 1920's, Plaintiff's property was formerly The Arcade Hotel which was a two-story structure containing approximately 33,719 square feet of interior space.
"It is conceded by Defendant that at minimum, the prior unit factor of the Plaintiff's property for purpose of the computation of impact fees would be 35.2 for each water and sewer. The significance of the unit factor is to enable the conversion of the commercial customer to the equivalent residential [sic] unit or `ERU'. Plaintiff is, for all purposes, the `customer' as to this property since a master meter serves the entire property.
"The City has, through its official Mrs. Finley, adopted its own unique method of computation to be applied to Plaintiff's structure wherein the official determines what the exact former usage of the building was prior to remodeling and then computes what the Defendant deems to be the new or expanded use of the remodeled space which is being requested for occupancy by a tenant or the owner. Under this method, for instance, presumably a former broom closet that had been remodeled as a toilet area would owe an impact fee for that square footage whereas a former restroom that was remodeled to be a broom closet would owe nothing. No carry-over or excess credit for any particular square footage area could be carried over, thus any unused credit is lost.
"Plaintiff contends that a fair method reasonably implied by the Ordinance requires the former usage credits to be recognized for the building as a whole and as occupancy of the structure occurs, due charges would be computed on the fee schedule set forth in the Ordinance. It claims an impact fee for both water and sewer can and will be applied to new or expanded uses most fairly by this method and thus avoid speculation and unfair loss of property rights currently inflicted.
"The Court agrees with Plaintiff in these contentions.
"The Court expressly refrains from passing upon the validity of the application of the Ordinance in any area other than as to allocation of credit to this property.
"The Court also refrains from a decision as to whether the duly-elected City Commissioners of the City could have enacted an allocation of credit method that might have been to the same effect as the methodology selected by Mrs. Finley. The simple fact is the City adopted no expressed method either way, hence the Court could not pass upon something the elected officials may or may not do.
"Nothing in this opinion shall imply any criticism of the building official, Brenda Finley, individually, but on the contrary the Court finds that she has made a loyal and innovative effort to protect the interest of her employer as she sees her duty to be.
"It is, therefore,
"ORDERED, ADJUDGED AND DECLARED:
"1. That as to Plaintiff's property, known as the [sic] Arcade Hotel, no impact fees for water or impact fees for sewer, as now imposed by Section 20.1 of the Code of the City of Tarpon Springs, shall respectively be collectible from said owner as Plaintiff in this cause until such time as there shall be in fact, by subsequent respective uses in the aggregate, a demonstrable impact upon the water and/or sewer systems respectively from the addition and occupancy uses of tenants of said structure.
"2. Determination of existence of the credit, if any, is to be calculated from time to time as the several applicable building permits are issued subsequent to the remodeling completion in March, 1986, against the structure as a whole rather than piece-meal square footage basis.
"3. Plaintiff is entitled to a refund of $11,554.00 forthwith as the proceeds of the impact fees heretofore found to be prematurely exacted from Plaintiff.
"4. The Court reserves jurisdiction upon proper motion to award costs and attorney's fees, if found proper by subsequent hearing.
"5. The Court further reserves jurisdiction to enter appropriate Orders and Judgments *328 to carry out the above declarations of rights."
The final judgment is affirmed. See City of Dunedin v. Contractors and Builders Ass'n of Pinellas County, 312 So.2d 763 (Fla.2d DCA 1975), reversed and remanded, 329 So.2d 314 (Fla. 1976), on remand, 330 So.2d 744 (Fla.2d DCA 1976), app. after remand to trial court, 358 So.2d 846 (Fla.2d DCA 1978), cert. denied, 370 So.2d 458 (Fla. 1979), cert. denied, 444 U.S. 867, 100 S.Ct. 140, 62 L.Ed.2d 91 (1979); St. Johns County, Florida v. N.E. Florida Builder's Ass'n, Inc., 583 So.2d 635 (Fla. 1991).
Appellant adopted ordinance 90-39 amending chapter 20-1 of its city code. The adoption of that ordinance shortly after the entry of the final judgment was an attempt by appellant to bolster and validate the actions of its administrative staff in assessing those impact fees which were set aside in the final judgment. Appellant urges that we apply that ordinance to effect a reversal of the final judgment. We conclude that ordinance 90-39 has no effect on the validity of the final judgment or its findings and conclusions as they pertain to the circumstances of this case. Otherwise, we do not pass upon the validity of ordinance 90-39 and its effect on the validity of chapter 20-1.
LEHAN and PARKER, JJ., concur.