760 So.2d 126 (2000)
VOLUSIA COUNTY, etc., et al., Appellants,
v.
ABERDEEN AT ORMOND BEACH, L.P., etc., Appellee.
No. SC95345.
Supreme Court of Florida.
May 18, 2000.
*128 Daniel D. Eckert, Volusia County Attorney, DeLand, Florida; and Richard S. Graham and Carol L. Allen of Landis, Graham, French, Husfeld, Sherman & Ford, P.A., Daytona Beach, Florida, for Appellants.
Frank D. Upchurch, III of Upchurch, Bailey and Upchurch, P.A., St. Augustine, Florida, for Appellee.
Frank A. Shepherd, Miami, Florida, for Pacific Legal Foundation, Amicus Curiae.
QUINCE, J.
We have for review a judgment certified by the district court to be of great public importance and to require immediate resolution by this Court. We have jurisdiction. See art. V, § 3(b)(5), Fla. Const. For the reasons discussed below, we affirm the trial court's decision finding the impact fee ordinance unconstitutional as applied to Aberdeen at Ormond Beach Manufactured Housing Community.
Aberdeen at Ormond Beach, L.P., owns Aberdeen at Ormond Beach Manufactured Housing Community (Aberdeen), a mobile home park in Ormond Beach that provides housing for persons at least 55 years of age or older. Aberdeen brought suit against Volusia County and the Volusia County School Board (Volusia County) to challenge the constitutionality of public school impact fees assessed on new homes constructed at Aberdeen.
As a mobile home park, Aberdeen is regulated by Chapter 723, Florida Statutes. Its minimum age requirements comply with the "housing for older persons" exemption of the Federal Fair Housing Act. See 42 U.S.C. § 3607 (1994 & Supp. I 1996). Aberdeen's Supplemental Declaration of Covenants, Conditions and Restrictions (Supplemental Declaration) contains the following provisions: exceptions to the minimum age requirement are permitted under limited circumstances; persons under eighteen are prohibited from permanently residing in any dwelling unit; the developer reserves the absolute right to modify or revoke all other covenants; and restrictions are binding upon owners for thirty years from the date of recordation.[1]
*129 In addition to the foregoing provisions, the Supplemental Declaration provides that the prohibition against minors is not subject to exception or waiver. See Supplemental Declaration art. II, §§ 2.2, 3.2. However, in an earlier declaration (Primary Declaration), the developer reserved a general right to amend and revoke covenants and restrictions on the property, including those that may be subsequently enacted.[2] By its terms, the Primary Declaration is not enforceable until it is recorded in the public records of Volusia County. See Primary Declaration para. 5 at 1. Aberdeen failed to comply with this provision and neither recorded nor executed the Primary Declaration. Nonetheless, Aberdeen secured the Bureau of Mobile Homes' approval of the Declaration for inclusion in the Prospectus that is delivered to all homeowners prior to signing the rental agreements.[3] As of July 1998, Aberdeen housed 142 people, 119 of whom were over 60. No children have ever lived in Aberdeen, and the youngest resident ever was 42.
Effective October 1, 1992, Volusia County enacted Ordinance No. 92-9, imposing countywide public school impact fees on new dwelling units constructed in Volusia County. The ordinance's definition of "dwelling unit" ("living quarters for one family only") included single and multi-family housing, but excluded nursing homes, adult congregate living facilities and group homes. Volusia County, Fla., Ordinance 92-9, art. 1, § 4, (July 2, 1992). In addition, the ordinance furthered the County's policy of ensuring "that new development should bear a proportionate share of the cost of facility expansion necessitated by such new development." Id. art. 1, § 2(l).
Volusia County, however, repealed Ordinance No. 92-9 as a result of a Stipulated Final Judgment in a case challenging the number of tax credits used in calculating the impact fee. See Florida Home Builders Ass'n, Inc. v. County of Volusia, No. 93-10992-CIDL, Div. 01 (Fla. 7th Cir. Nov. 21, 1996). In its place, the County enacted Ordinance No. 97-7 on May 15, 1997, employing the more liberal tax credits required by the Stipulated Final Judgment.[4] The County projected that the new recalculations would "assure that the fee imposed on new development does not require feepayers to bear more than their equitable share of the net capital cost in relation to the benefits conferred." Volusia *130 County, Fla., Ordinance 97-7, § VI (May 15, 1997) (enacting Volusia County, Fla., Code of Ordinances art. V, ch. 70, § 70-174(d)).
The impact fee represents the cost per dwelling unit of providing new facilities. Ordinance 97-7 lowered the impact fee and permitted adjustments "to reflect any inflation or deflation in school construction costs." Id. § VII, (enacting code § 70-175(d)). In calculating the fee, the County utilized the student generation rate, which is the average number of public school students per dwelling unit. Pursuant to the Volusia County impact fee ordinances, Aberdeen has paid $86,984.07 under protest for 84 homes as of July 31, 1998.
Aberdeen filed suit against Volusia County, claiming, inter alia, that public school impact fees were unconstitutional as applied to Aberdeen because of the deed restrictions prohibiting minors from living on the property. In response, the County argued that exempting Aberdeen would convert the impact fee into a "user fee," thereby violating the state constitutional guarantee of a free public school system. Although both parties filed motions for summary judgment, the trial court denied Volusia County's motion and granted Aberdeen's motion.
In denying Volusia County's motion for summary judgment, the court rejected both its preliminary stare decisis and mootness claims. The court held that St. Johns County v. Northeast Florida Builders Ass'n, Inc., 583 So.2d 635 (Fla.1991), determined the validity of the methodology of the impact fee, not its constitutionality as applied to Aberdeen. Additionally, the court held that Florida Home Builders did not govern the dispute because it addressed solely the tax credits permissible in calculating the fee. Rejecting the mootness claim, the court distinguished Town of Longboat Key v. Lands End, Ltd., 433 So.2d 574 (Fla. 2d DCA 1983), by noting that the technical defect in the Longboat Key ordinance was cured by amending the statute, whereas the challenge to the fundamental validity of the fee as applied to Aberdeen was not resolved by the enactment of the second ordinance. Therefore, these threshold issues did not preclude review.
The trial court granted Aberdeen's motion for summary judgment based on a variety of grounds. First, the trial court recognized that the Primary Declaration was neither executed nor recorded, that modifying the age restriction would substantially change the character of the development, and that Aberdeen would be estopped from asserting a contrary position in the future. Accordingly, the trial court concluded that section 7.2 of the Primary Declaration would not be enforceable in the "foreseeable future." Second, the trial court reasoned that the rationale underlying St. Johns County was inapplicable to housing with land use restrictions prohibiting children. Third, the trial court, applying the dual rational nexus test, held that no substantial relationship existed between the need for new schools and the new development because no children resided in Aberdeen. Fourth, the trial court held that Aberdeen did not benefit from the construction of new schools for the same reason.
Volusia County subsequently filed a notice of appeal in the Fifth District and simultaneously requested certification of the case to this Court as a matter of great public importance. Pursuant to the pass-through certification provision of article V, section 3(b)(5), the Fifth District refrained from hearing the case and granted Volusia County's certification request. This Court subsequently accepted jurisdiction.
Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law. Menendez v. Palms West Condominium Ass'n, 736 So.2d 58 (Fla. 1st DCA 1999). Thus, our standard of review is de novo. The first prong of the summary judgment standard is easily established in the instant case *131 because no factual disputes exist. Although the parties disagree about whether Aberdeen is an age-restricted community, this dispute essentially pertains to a question of law. Indeed, "[w]here the determination of the issues of a lawsuit depends upon the construction of a written instrument and the legal effect to be drawn therefrom, the question at issue is essentially one of law only and determinable by entry of summary judgment." Cox v. CSX Intermodal, Inc., 732 So.2d 1092, 1096 (Fla. 1st DCA) (quoting Angell v. Don Jones Ins. Agency, 620 So.2d 1012, 1014 (Fla. 2d DCA 1993)), review denied, 744 So.2d 453 (Fla.1999). Accordingly, the issue before the Court is whether the trial court correctly determined that Aberdeen was entitled to prevail as a matter of law.
As a threshold matter, Volusia County asserts that the trial court misapplied the doctrine of stare decisis by requiring that the same parties be present to trigger application. Apparently, Volusia County has misinterpreted the trial court's order. In support of its ruling, the trial court stated, "A decision is not stare decisis as to points of law which were not litigated by the parties and decided by the court. The issues Plaintiff is raising in this case simply were not decided in the cases on which Defendants rely." In other words, the court merely recognized that stare decisis was not applicable where the parties in the earlier proceedings did not raise the same issues of law. Contrary to Volusia County's assertions, nothing in the Order suggests that the trial court misapplied the doctrine of stare decisis.
Volusia County further contends that Florida Home Builders and St. Johns County control the outcome of this dispute. In Florida Home Builders, the plaintiffs challenged the number of tax credits used in calculating the impact fee. In settling the dispute, Volusia County agreed to utilize a more liberal standard to determine the permissible credits for other funding. Volusia County argues that it should not have to relitigate the calculation of the fee with every homeowner. Specifically, the County contends that Aberdeen's claims are barred because both Florida Home Builders and the instant case involve challenges to the methodology used in determining the feepayer's proportionate share of the impact fee. This purported similarity, however, oversimplifies Aberdeen's claims. While the plaintiffs in Florida Home Builders disputed the calculation used to determine the amount of the fee, Aberdeen argues that it is exempt from the fee. In short, Florida Home Builders involved a challenge to the methodology; the instant case involves a challenge to the fee's constitutionality as applied to Aberdeen. Therefore, Florida Home Builders is not controlling precedent.
Similarly, St. Johns County does not preclude review of Aberdeen's claims. In St. Johns County, the plaintiffs attacked the impact fee ordinance as unconstitutional on its face. See St. Johns County, 583 So.2d at 637. The ordinance allocated the cost of new schools to each new unit of residential development. See id. In addition, the ordinance permitted households to adjust the fee in individual cases. See id. at 640. The Court rejected the argument that dwelling units without children did not have an impact on the school system, noting that occupants would change and children would "come and go." Id. at 638. The Court likewise rejected the argument that the "benefits" prong of the dual rational nexus test requires that "every new unit of development benefit from the impact fee in the sense that there must be a child residing in that unit who will attend public school." Id. at 639. However, the Court ultimately found that the ordinance was defective because fee funds could be spent within municipalities whose residents were not subject to the fee. See id. The St. Johns County plaintiffs also attacked the ordinance on the ground that it violated the state constitutional guarantee of a uniform system of free public schools. See id. The Court opined that *132 the adjustment provision for individual households would turn into a user fee paid primarily by families with children in school. See id. at 640, Thus, the Court invalidated the alternative provision, but noted that exemptions for adult housing where land use restrictions prohibited minors from residing were permissible. See id. at 640 n. 6.
Volusia County contends that St. Johns County and the instant case involve the same issues of law. It notes that the plaintiffs in St. Johns County contested the constitutionality of the fee because a portion of the county was excluded, while Aberdeen similarly contests the constitutionality of the fee because it is included. Although the plaintiffs seek opposite results, argues Volusia County, the issues of law remain the same. This argument, however, overlooks the unique issue that Aberdeen's claims raise. The Court in St. Johns County approved the methodology used in the impact fee ordinance. Additionally, the Court articulated the constitutional prohibition against assessing fees based on whether children actually lived in the dwelling unit. Aberdeen, however, is neither attacking the fundamental validity of the ordinance nor arguing that fees should be assessed solely based on use. Instead, Aberdeen challenges the imposition of school impact fees on a development that is closed to children. Thus, Aberdeen's "as applied" challenge raises the question of whether St. Johns County's rationale is applicable to its deedrestricted adult community. Although the Court's dicta addressed this scenario, the Court's holding simply did not reach this issue. Therefore, St. Johns County does not bar Aberdeen's claims.
In an effort to thwart the foregoing analysis, Volusia County contends that Aberdeen has disguised its challenge to the methodology as an "as applied" claim. In effect, Volusia County argues that the application cannot be challenged without contesting the methodology. To bolster its argument, Volusia County discusses in depth cases where the "as applied" challenge was successful because the underlying methodology was defective. See Contractors & Builders Ass'n v. City of Dunedin, 329 So.2d 314 (Fla. 1976); Westwood Lake, Inc. v. Dade County, 264 So.2d 7 (Fla.1972); Florida Keys Aqueduct Auth. v. Pier House Joint Venture, 601 So.2d 1270 (Fla. 3d DCA 1992); City of Tarpon Springs v. Tarpon Springs Arcade Ltd., 585 So.2d 324 (Fla. 2d DCA 1991). This aspect of the cited cases, however, is irrelevant. It is well settled that an ordinance that is constitutional on its face may be unconstitutional as applied to a particular party. See City of Miami v. Stegemann, 158 So.2d 583 (Fla. 3d DCA 1963). That the underlying methodology may be invalidated in other cases does not transform the nature of Aberdeen's claims. As previously mentioned, Aberdeen is not challenging the fundamental validity of the ordinance; it challenges the assessment of the fee only as it is applied to Aberdeen. Therefore, we hold that stare decisis does not preclude review of Aberdeen's claims.
Determining whether Aberdeen is an age-restricted community, however, is a more contentious issue. Aberdeen asserts that the Supplemental Declaration's prohibition against minors permanently residing on the premises is controlling. Volusia County, by contrast, asserts that the Primary Declaration, which reserves the right to revoke all amendments subsequently enacted, controls over the language in the Supplemental Declaration.
Aberdeen challenges the legality of the Primary Declaration on a variety of grounds. First, Aberdeen neither executed nor recorded the Primary Declaration. By its terms, the Primary Declaration is not effective until it is recorded in the public records of Volusia County. It is axiomatic that when construing a document, courts should give effect to the plain meaning of its terms. See, e.g., Scudder v. Greenbrier C. Condominium Ass'n, 663 *133 So.2d 1362, 1367 (Fla. 4th DCA 1995). In effect, Volusia County is contending that a document, which by its terms is not effective, should control. To the contrary, the express language of the Primary Declaration renders it ineffective, and Volusia County's assertions to the contrary cannot change that result.
Yet Volusia County still urges the Court to recognize the inequities that will occur if the Primary Declaration is ignored. It argues that allowing Aberdeen to disavow a controlling document because of its own failure to record it would violate the purpose of chapter 723 of the Florida Statute the protection of mobile home owners. However, as Aberdeen points out, disregarding the Primary Declaration is more favorable to the homeowners because it preserves the age restrictions in effect when they signed their rental agreements.
Second, rules of construction militate in favor of construing the Supplemental Declaration as controlling. Specifically, the principle that specific clauses take precedence over general clauses buttresses Aberdeen's position. See Raines v. Palm Beach Leisureville Community Ass'n, 317 So.2d 814, 817 (Fla. 4th DCA 1975). Although the Primary Declaration refers to a general right to modify or revoke all restrictions, the Supplemental Declaration specifically states in two sections that the prohibition against minors is not subject to exception or waiver. Indeed, section 3.2 of the Supplemental Declaration expressly provides that Aberdeen retains the right to revoke or modify restrictions, except those prohibiting minors from residing on the property. See Supplemental Declaration art. II, § 3.2. Thus, it is reasonable to conclude that the specific provisions in the Supplemental Declaration control over the general language in the Primary Declaration.
Moreover, both declarations provide that the owner's good faith construction and interpretation of the covenants and restrictions shall be final and binding. See id. art. II, § 3.6; see also Primary Declaration art. VII, § 7.6. Aberdeen's construction is reasonable and it would be estopped from asserting a contrary position in the future. See, e.g., Federated Mut. Implement & Hardware Ins. Co. v. Griffin, 237 So.2d 38 (Fla. 1st DCA 1970).
Third, even if the Primary Declaration had been recorded, it still might not be enforceable. The reservation of an absolute right to revoke is circumscribed by an implied reasonableness test. See Nelle v. Loch Haven Homeowners' Ass'n, 413 So.2d 28, 29 (Fla.1982). As this Court in Nelle recognized:
Traditionally, reservation of the right to modify restrictions, without some limit, allowed the grantor to entirely change the character of the subdivision at the grantor's whim with no corresponding benefit to the grantee.... More recently, however, courts have begun to require that the reserved power be exercised in a reasonable manner so as not to destroy the general plan.
Nelle, 413 So.2d at 29. Thus, even if the Primary Declaration were effective, Aberdeen could not exercise it in a way that substantially changed the character of the development. Because Aberdeen was constructed essentially for the benefit of persons age 55 and over, revocation of the restriction prohibiting minors might not be considered reasonable. Accordingly, reservation of the right to modify restrictions does not necessarily include the unbridled right to revoke the prohibition against minors.
Nevertheless, Volusia County contends that the foregoing analysis blurs the issue. It emphasizes that the question is not whether Aberdeen, upon exercising its power, would prevail in a court of equity, but whether Aberdeen has the legal power to revoke the restrictions in the Supplemental Declaration. Admittedly, the analysis delves into whether an exercise of the power to revoke would be reasonable. However, "in determining the enforceability of [the declarations], *134 the test is one of reasonableness." Holiday Pines Property Owners Ass'n, Inc. v. Wetherington, 596 So.2d 84, 87 (Fla. 4th DCA 1992). While the power to revoke and the exercise of that power may frequently present two separate questions, the issues here are intertwined. The requirement of reasonableness necessarily involves some inquiry into the exercise of that power to determine its validity. The argument that the lower court's construction entailed a speculative assessment of future challenges is not altogether convincing since the enforceability of the declarations are presently at issue. Moreover, even if this reasonableness determination is deemed unnecessary, the Primary Declaration could still be invalidated on any of the aforementioned grounds.
In sum, the Primary Declaration is legally defective for a variety of reasons: it was neither executed nor recorded, rules of construction militate in favor of enforcing the Supplemental Declaration's specific provisions, and the reservation of the right to revoke is circumscribed by an implied reasonableness test. Accordingly, we hold that the Supplemental Declaration controls over the Primary Declaration and, therefore, Aberdeen is an age-restricted community.
The parties also dispute the proper application of the dual rational nexus test. In St. Johns County, the Court expressly adopted the dual rational nexus test for determining the constitutionality of impact fees: the local government must demonstrate reasonable connections between (1) "the need for additional capital facilities and the growth in population generated by the subdivision" and (2) "the expenditures of the funds collected and the benefits accruing to the subdivision." St. Johns County, 583 So.2d at 637 (quoting Hollywood, Inc. v. Broward County, 431 So.2d 606, 611-12 (Fla. 4th DCA 1983)). Volusia County argues that the test requires needs and benefits to be assessed based on countywide growth, and that the specific-need/special-benefit analysis is limited to the water and sewer line context.[5] This argument, however, is without merit.
The language of the test itself belies the assertion that a countywide standard should be employed. The first prong of the test explicitly requires a nexus between the County's need and the "growth in population generated by the subdivision." 583 So.2d at 637. Similarly, the test's second prong ensures that "benefits accru[e] to the subdivision." Id. Thus, the explicit references to subdivisions indicate that the standard is not tailored to countywide growth, but to growth of a particular subdivision.
Furthermore, this Court in St. Johns County adopted the dual rational nexus test exactly as it was enunciated in Hollywood, Inc. v. Broward County, 431 So.2d 606 (Fla. 4th DCA 1983), which applied the test to parks. The test ensures that the Broward County requirementsthe fee must "offset needs sufficiently attributable to the subdivision" and the fee revenue must be "sufficiently earmarked for the substantial benefit of the subdivision residents" are satisfied. Id. at 611. Moreover, this Court in St. Johns County reaffirmed the Dunedin requirement that the fees must "be spent to benefit those who have paid the fees." St. Johns County, 583 So.2d at 639. Thus, the Court's use of the dual rational nexus test has not been limited to the water and sewer line context.
Additionally, in Collier County v. State, 733 So.2d 1012 (Fla.1999), we reaffirmed the specific-need/special-benefit standard. Construing St. Johns County, we said, "[T]he fee in St. Johns County was invalid because it did not provide a unique benefit to those paying the fee." Id. at 1019. We *135 further explained that the fee at issue in Collier County was an invalid tax because "the services to be funded by the fee are the same general police-power services provided to all County residents." Id. Thus, we expressly repudiated a countywide standard for determining the constitutionality of impact fees.
Nevertheless, Volusia County highlights the dicta in St. Johns County as credible support for its position: "Thus, if this were a countywide impact fee designed to fund construction of new schools as needed throughout the county, we could easily conclude that the second prong of the test had been met." St. Johns County, 583 So.2d at 639. Certainly, this statement bolsters Volusia County's contention that a countywide standard should be employed. At the very least, the dicta created ambiguity in determining the application of the test.
Nonetheless, our repeated citations to the special-benefit standard and our interpretation of St. Johns County demonstrate that we did not abandon the subdivision-based standard. Indeed, imposing a countywide standard would eviscerate the substantial nexus requirement. This nexus is significant because of the distinction between taxes and fees. As this Court noted in Collier County, "[T]here is no requirement that taxes provide any specific benefit to the property; instead, they may be levied throughout the particular taxing unit for the general benefit of residents and property." Collier County, 733 So.2d at 1016 (quoting City of Boca Raton v. State, 595 So.2d 25, 29 (Fla.1992)). Fees, by contrast, must confer a special benefit on feepayers "in a manner not shared by those not paying the fee." Id. at 1019. We likewise noted in State v. City of Port Orange, 650 So.2d 1, 3 (Fla.1994), that "the power of a municipality to tax should not be broadened by semantics which would be the effect of labeling what the City is here collecting a fee rather than a tax." Thus, a liberal reading of the dual rational nexus test would obliterate the distinction between an unconstitutional tax and a valid fee.
Volusia County also contends that St. Johns County's refusal to exempt households with no minor children from paying public school impact fees demonstrates that a countywide standard is required. This contention, however, is less persuasive when considered in context. The rationale underlying this Court's statement was that "[d]uring the useful life of the new dwelling units, school-age children will come and go." St. Johns County, 583 So.2d at 638. We were concerned with exempting some units because of the potential in the future that students would be residing in the developments. We did, however, distinguish restricted housing, noting that "[w]e would not find objectionable a provision that exempted from the payment of an impact fee permits to build adult facilities in which, because of land use restrictions, minors could not reside." Id. at 640 n. 6. This statement negates the contention that a countywide standard must be utilized. Thus, the logical conclusion is that where there is no potential for student-generating housing to exist within the subdivision, the subdivision may be exempt from paying public school impact fees. In short, the foregoing analysis demonstrates that the specific-need/special-benefit standard is a more favorable construction of the dual rational nexus test.
Despite this narrow construction, Volusia County contends that the "need" prong of the test is satisfied because Aberdeen's growth directly affects the student generation rate used in calculating the fee, that is, the average number of public school students per dwelling unit. Volusia County notes that all residential dwellings, including adult communities, are considered when determining the student generation rate. Consequently, the County contends Aberdeen affects the student generation rate and amount of the fee because if the number of households *136 without children increases, the rate decreases, and therefore the fee decreases.
The issue, however, is not whether Aberdeen influences the student generation rate or the amount of the impact fee, but whether Aberdeen increases the need for new schools. Indeed, Ordinance 97-7 defines "land development activity" as "any change in land use or any construction or installation of a dwelling unit, or any change in the use of any structure that will result in additional students in the public schools of the District." Volusia County, Fla., Ordinance 97-7, § III (May 15, 1997) (adopting County Code § 70-171(aa) (emphasis added)). In addition, the test itself clearly frames the issue: whether there is a "need for additional capital facilities." St. Johns County, 583 So.2d at 637 (emphasis added). Moreover, the student generation rate has remained unchanged since the impact fee was initially assessed in 1992. The ordinance provides that it will be adjusted only to "reflect any inflation or deflation in school construction costs." Volusia County, Fla. Ordinance 97-7, § VII (adopting code § 70-175(d)). It does not contemplate adjustments based on variations in countywide demographics. As Aberdeen correctly points out, even if adjustments to the student generation rate were correlative to developmental growth, it would not change the fact that Aberdeen does not generate any students. That all residential units were included in the initial student generation rate is insufficient to establish a substantial nexus between Aberdeen's growth and the need for new schools. Thus, Aberdeen's purported effect on the student generation rate does not satisfy the dual rational nexus test.
Volusia County also contends that Aberdeen contributes to the need for schools because the Volusia County School District is required to provide free schooling to all students with disabilities up to the age of twenty-one. Because Aberdeen's age restrictions only prohibit minors from living on the property, the County asserts that the potential to generate students still exists. Volusia County, however, fails to recognize that both the need for new schools and the site selection process is determined according to enrollment projections for elementary, middle, and high school students. Adult enrollment is not factored into these decisions. Although the remote possibility exists that an adult Aberdeen resident could attend school in some capacity, this is also the case with residents of nursing homes and group homes for disabled persons who are exempt from the fee. As the trial court correctly concluded, "[T]he rational nexus test requires Aberdeen to have more than a possible or an incidental impact on the need for schools. In the final analysis, housing that allows children is the land use that creates the need for new school facilities."
Volusia County is also unable to satisfy the "benefits" prong of the dual rational nexus test. Because no children can live at Aberdeen, impact fees collected at Aberdeen will not be spent for Aberdeen's benefit, but for the benefit of children living in other developments. Volusia County contends that Aberdeen benefits from the construction of new schools because they also serve as emergency shelters and sites for adult education classes. However, the connection between the expenditure of impact fee funds for the construction of new schools and the tangential benefit of having places of refuge in natural disasters is too attenuated to demonstrate a substantial nexus. Put another way, the schools are built primarily for the educational benefit of school-age children and, to the extent that Aberdeen derives any incidental benefit from their construction, it is insufficient to satisfy the dual rational nexus test.
In sum, Aberdeen neither contributes to the need for additional schools nor benefits from their construction. Accordingly, the imposition of impact fees as applied to Aberdeen does not satisfy the dual rational nexus test.
Volusia County also argues that requiring an exemption for age-restricted *137 communities converts the impact fees into user fees, thereby violating the constitutional guarantee of free public schools. In City of Port Orange, we defined user fees as fees that are "charged in exchange for a particular governmental service which benefits the party paying the fee in a manner not shared by other members of society." City of Port Orange, 650 So.2d at 3. We further explained that "the party paying the fee has the option of not utilizing the governmental service and thereby avoiding the charge." Id. In St. Johns County, we held that article IX, section 1 of the Florida Constitution prohibits counties from imposing school user fees on new development.[6]See St. Johns County, 583 So.2d at 640. Specifically, we said that exempting households simply because they did not contain students constituted an unconstitutional user fee. St. Johns County, 583 So.2d at 640. We further indicated that a school impact fee will not be deemed a prohibited user fee simply because adult-only facilities are exempt: "We would not find objectionable a provision that exempted from the payment of an impact fee permits to build adult facilities in which, because of land use restrictions, minors could not reside." Id. at 640 n. 6.
Volusia County contends that the lower court's use of the specific-need/special-benefit standard converted this permissive language into a mandatory exemption, thereby transforming it into a user fee. For purposes of the present inquiry, Volusia County's purported distinction between permissive and mandatory exemptions is inconsequential. That the exemption is mandatory rather than permissive does not resolve the issue of its constitutionality. Further, exempting deed-restricted adult communities cannot be equated to exempting households that do not have children. As previously mentioned, the reasoning underlying St. Johns County's holding was that some units had the potential to generate students. See St. Johns County, 583 So.2d at 638 ("During the useful life of the new dwelling units, school-age children will come and go."). Thus, where there is no potential to generate students, there is no impact warranting the imposition of fees. Furthermore, this interpretation is wholly consistent with our Court's statement that deed-restricted housing could be exempt. Therefore, the lower court's construction of St. Johns County does not convert the impact fee into an unconstitutional user fee.
For the foregoing reasons, we hold that Volusia County's public school impact fees are unconstitutional as applied to Aberdeen. Accordingly, we affirm the trial court's decision.
It is so ordered.
HARDING, C.J., and SHAW, WELLS, PARIENTE and LEWIS, JJ., concur.
ANSTEAD, J., concurs in result only.
NOTES
[1] The full text of the provisions summarized above is as follows:

2.1 Age Restriction. The Property shall be operated as a Community for Older Persons, in compliance with the terms and provisions of the Federal Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601-19.
2.2 Prohibition Against Minors. In no event shall any person under the age of eighteen (18) years reside within any dwelling unit on the Property as a permanent residence.
2.3 Exceptions. While the prohibition against minors contained in Section 2.2 shall not be subject to waiver or exception, the Owner reserves the right to allow persons under the age of 55 years to reside on the Property under limited circumstances, in compliance with the Federal Fair Housing Act and the Community rules.
3.1 Duration. The covenants, conditions and restrictions of this Supplemental Declaration shall run with and bind the Property, and shall inure to the benefit of and be enforceable by the Owner and the Unit Owners, for a period of thirty (30) years from the date this Supplemental Declaration is recorded.
3.2 Amendments by Declarant. While the prohibition against minors residing in the Community contained in Section 2.2 shall not be subject to revocation or amendment, Declarant specifically reserves for itself, its successors and assigns, the absolute and unconditional right to alter, modify, change, revoke, rescind, or cancel any or all of the other restrictive covenants contained in this Supplemental Declaration, without the necessity of joinder by Unit Owners or any other persons or entities.
Supplemental Declaration of Covenants, Conditions and Restrictions For Aberdeen At Ormond Beach Manufactured Housing Community art. II, §§ 2.1-2.3, art. II, §§ 3.1-3.2.
[2] The full text of section 7.2 of the Primary Declaration states:

7.2 Amendments by Declarant. Declarant specifically reserves for itself, its successors and assigns, the absolute and unconditional right to alter, modify, change, revoke, rescind, or cancel any or all of the restrictive covenants contained in this Declaration or hereinafter included in any subsequent Declaration. Further, Declarant shall have the right, without the necessity of joinder by Unit Owners or any other persons or entities, to make modifications to this Declaration.
Declaration of Covenants, Conditions and Restrictions for Aberdeen at Ormond Beach Manufactured Housing Community art VII, § 7.2.
[3] The approved Prospectus is required by statute. See § 723.011, Fla. Stat. (1997).
[4] The Stipulated Final Judgment utilized the Banberry-Lafferty standard, a nationally accepted methodology, to determine the permissible credits. (Stipulated Final Judgment ¶ ¶ 17, 29). This standard provided more credits for additional funding sources, thereby reducing the overall impact fee.
[5] Volusia County is alluding to Contractors & Builders Association v. City of Dunedin, 329 So.2d 314 (Fla.1976), in which the court applied the dual rational nexus test to determine the constitutionality of water and sewer line fees.
[6] Prior to 1998, article IX, section 1 provided for a "uniform system of free public schools." Art. IX, § 1, Fla. Const. (1968). As amended in 1998, the section provides that "[a]dequate provision shall be made by law for a uniform, efficient, safe, secure, and high quality system of free public schools." Art. IX, § 1, Fla. Const.