# Third District Court of Appeal
## State of Florida

Opinion filed July 6, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-950
Lower Tribunal No. 13-474 CC
_____

**United Automobile Insurance Company**,
Appellant,

vs.

**Central Therapy Center, Inc., a/a/o Vanessa Lopez**,
Appellee.


An Appeal from the County Court for Miami-Dade County, Gloria Gonzalez-Meyer, Judge.

Michael J. Neimand,  for appellant.

David B. Pakula, P.A., and David B. Pakula (Pembroke Pines); Corredor & Husseini, P.A., and Maria E. Corredor,  for appellee.


Before LOGUE, LOBREE, and BOKOR, JJ.

LOGUE, J.

This case arises under Florida's "No-Fault Personal Injury Protection" insurance laws, commonly known as the "PIP" statute, sections 627.730 et seq., Florida Statutes. United Automobile Insurance Company appeals the trial court's order granting final summary judgment in favor of Central Therapy Center, Inc. as the assignee of Vanessa Lopez. The issue is whether an insurer that concedes physiotherapy treatments were medically reasonable and necessary can refuse to pay for the treatments because the records maintained by the treating physician failed to comply with the record-keeping requirements of the laws and regulations governing the licensing of chiropractors. We hold that, where an insurer agrees treatments are medically reasonable and necessary, a failure to comply with the record keeping requirements governing the licensing of chiropractors is not a basis to refuse to compensate the claim. Accordingly, we affirm.

FACTS

Ms. Lopez was injured in a car accident. She received medical treatments from, and assigned her right to be reimbursed for the cost of the treatments to, Central Therapy. Central Therapy sued United Automobile for reimbursement. In the course of the lawsuit, United Automobile stipulated that the physical therapy treatments Central Therapy provided to Ms. Lopez were reasonable and necessary. Nevertheless, United Automobile

2

contended that Lopez's medical records failed to comply with the statutes and regulations governing the record-keeping requirements of chiropractors.

The medical records in their entirety consist of approximately 100 pages, including the diagnoses and treatment plans made over four visits in the course of eight weeks. The record in controversy was made on a pre-printed form. The section of the record in dispute lists 12 physical therapy treatments with the language "(1-2)" next to them and a line for a check mark. Rather than individually check each of the therapies, the chiropractor drew a bracket including all of them and made a nine-word illegible comment, which she initialed.

The trial court granted summary judgment in favor of Central Therapy. It determined both that (1) an examination of the medical record itself indicated that there was no factual dispute and the record complied with the applicable statutes and regulations; and (2) technical noncompliance with the record keeping requirements in these circumstances did not render the treatments "unlawful" under the statute. United Automobile timely appealed.

ANALYSIS

We review a trial court's order granting final summary judgment de novo. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126 (Fla. 2000).

3

We focus on the trial court's second ground for granting summary judgment. The dispute on this ground centers on the provisions of the PIP laws that require the insurer to reimburse only covered lawful medical care that is reasonable, related, and medically necessary. § 627.736(1)(a) (requiring that all automobile insurance contracts provide coverage for "[e]ighty percent of all <u>reasonable</u> expenses for <u>medically necessary</u> medical . . . and rehabilitative services." (emphasis added)). The caselaw has interpreted this language as requiring that the services be related to the accident giving rise to coverage. <u>See</u> <u>United Auto. Ins. Co. v. W. Med. Ctr. Health Care II, Corp.</u>, 326 So. 3d 794, 795 n.2 (Fla. 3d DCA 2021). Another provision of the PIP statutes provides "[a]n insurer or insured is not required to pay a claim or charges . . . [f]or any service or treatment that was not <u>lawful</u> at the time rendered." § 627.736(5)(b)(1)(b), Fla. Stat. (emphasis added). As defined in the statute, "'Lawful' or 'lawfully' means in substantial compliance with all relevant applicable criminal, civil, and administrative requirements of state and federal law related to the provision of medical services or treatment." § 627.732(11), Fla. Stat.

United Auto contends that Lopez's physiotherapy treatments were unlawful because the prescription for the treatment failed to comply with standards for medical records in accordance with section 460.413(1)(m),

4

Florida Statutes, and Florida Administrative Code Rule 64B2-17.0065.

Section 460.413 is entitled "Grounds for disciplinary action; action by board

or department." It provides that a chiropractor is subject to disciplinary action

for various reasons including failure to maintain records to certain standards.

It reads:

> (1) The following acts constitute grounds for denial of a license or disciplinary action, as specified in s. 456.072(2):
> . . .
> (m) Failing to keep legibly written chiropractic medical records that identify clearly by name and credentials the licensed chiropractic physician rendering, ordering, supervising, or billing for each examination or treatment procedure and that justify the course of treatment of the patient, including, but not limited to, patient histories, examination results, test results, X rays, and diagnosis of a disease, condition, or injury. X rays need not be retained for more than 4 years.

§ 460.413, Fla. Stat. Regarding this statutory record-keeping requirement,

the Florida Department of Health, Division of Chiropractic Medicine,

promulgated Rule 64B2-17.0065 further clarifying the recordkeeping

standards:

> Minimal Recordkeeping Standards.
> (1) These standards apply to all licensed chiropractic physicians and certified chiropractic assistants. These standards also apply to those examinations advertised at a reduced fee, or free (no charge) service.

5

(2) Medical records are maintained for the following purposes:

(a) To serve as a basis for planning patient care and for continuity in the evaluation of the patient's condition and treatment.

(b) To furnish documentary evidence of the course of the patient's medical evaluation, treatment, and change in condition.

(c) To document communication between the practitioner responsible for the patient and any other health care professional who contributes to the patient's care.

(d) To assist in protecting the legal interest of the patient, the hospital, and the practitioner responsible for the patient.

(3) The medical record shall be legibly maintained and shall contain sufficient information to identify the patient, support the diagnosis, justify the treatment and document the course and results of treatment accurately, by including, at a minimum, patient histories; examination results; test results; records of drugs dispensed or administered; reports of consultations and hospitalizations; and copies of records or reports or other documentation obtained from other health care practitioners at the request of the physician and relied upon by the physician in determining the appropriate treatment of the patient. Initial and follow-up services (daily records) shall consist of documentation to justify care. If abbreviations or symbols are used in the daily recordkeeping, a key must be provided.

(4) All patient records shall include:

(a) Patient history;

(b) Symptomatology and/or wellness care;

(c) Examination finding(s), including X-rays when medically or clinically indicated;

(d) Diagnosis;

(e) Prognosis;

(f) Assessment(s);

(g) Treatment plan; and,

(h) Treatment(s) provided.

(5) All entries made into the medical records shall be accurately dated. The treating physician must be readily identifiable either by signature, initials, or printed name on the record. Late entries are permitted, but must be clearly and accurately noted as late entries and dated accurately when they are entered into the record.

(6) Once a treatment plan is established, daily records shall include:

(a) Subjective complaint(s);

(b) Objective finding(s);

(c) Assessment(s);

(d) Treatment(s) provided; and,

(e) Periodic reassessments as indicated.

(7) In situations involving medical examinations, tests, procedures, or treatments requested by an employer, an insurance company, or another third party, appropriate medical records shall be maintained by the physician and shall be subject to Section 456.057, F.S. However, when such examinations, tests, procedures, or treatments are pursuant to a court order or rule or are conducted as part of an independent medical examination pursuant to Section 440.13 or 627.736(7), F.S., the record maintenance requirements of Section 456.057, F.S., and this rule do not apply. Nothing herein shall be interpreted to permit the destruction of medical records that have been made pursuant to any examination, test, procedure, or treatment except as permitted by law or rule.

(8) Provided the Board takes disciplinary action against a chiropractic physician for any reason, these minimal clinical standards will apply. It is understood that these procedures are the accepted standard(s) under this chapter.

Fla. Admin. Code R. 64B2-17.0065.

We are not persuaded by United Automobile's argument that a treating physician's failure to comply with the recordkeeping provisions of section 460.413 and rule 64B2-17.0065 makes an otherwise reasonable, related, and medically necessary service or treatment "unlawful" as that term is used in section 627.736(5)(b)(1)(b). The focus of 627.736(5)(b)(1)(b)'s lawfulness requirement is on "service or treatment." It provides an insurer need not pay for "service or treatment" that is unlawful. When read in the context of the PIP statutes as a whole, we believe this language is concerned with whether the service or treatment itself violates existing laws.

The recordkeeping provisions that United Automobile cites, however, do not deal with the lawfulness of services or treatments. Instead, they deal only with the recordkeeping that a chiropractor must maintain to keep his or her license in good standing. Section 460.413 is entitled "Grounds for disciplinary action, action by board or department." The statute provides that failure to abide by its provision constitutes grounds for disciplinary action, "as specified in § 456.072(2)." This language contrasts with other parts of Chapter 460 that make certain conduct illegal. See, e.g., § 460.411(1)(a) (making practice of chiropractic medicine without a license a third-degree felony). Thus, there is no indication that the Legislature intended that a failure

8

to maintain records to the standard in the regulations would render the treatment or service itself per se illegal.

Moreover, section 456.072(2) leaves the interpretation and application of these provisions, certainly in the first instance, to the expertise of the board and department. It specifically states that "[w]hen <u>the board, or the department when there is no board</u>, finds any person guilty" of an action justifying a disciplinary response it may enter an order imposing one of several sanctions. Likewise, rule 64B2-17.0065 indicates that "[p]rovided the Board takes disciplinary action against a chiropractic physician for any reason, these minimal clinical standards will apply." United Automobile would upend this legislative assignment of responsibility and place insurers and courts in the role of combing through records to decide when, for example, the occurrence of illegible notes by doctors failed to substantially comply with the requirement that "[t]he medical record shall be legibly maintained" established in rule 64B2-17.0065(3). That analysis is too far removed from the focus on the legality of the treatment or service itself which was the Legislature's concern in the lawfulness requirement of section 627.736(5)(b)(1)(b).[1]

---

[1] For a thoughtful analysis on when an affirmative defense is more directly related to the lawfulness requirement of the statute, see <u>Gallo Med.Ctr. v. State Farm Fire and Cas. Co.</u>, 27 Fla. L. Weekly Supp. 130b (Fla. 11th Cir.

At the same time, we acknowledge that the statutory framework presumes that a provider's records will be made available to a covering insurer. See § 627.736(6)(b) (providing that upon request a provider must "furnish a written report of the history, condition, treatment, dates, and costs of such treatment of the injured person"). In this case, we are not dealing with a situation where the condition of the medical records prevents the insurer from evaluating whether the service and treatment were reasonable, related, medically necessary, or lawful.

Affirmed.

---

Mar. 26, 2019) (Bokor, J.) (permitting an "unlawfulness" affirmative defense that addresses specifically the legality of the provision of the service at issue).