DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**BABETTE VARANO,**
Appellant,

v.

**STEVEN VARANO** and **VINCENT MICHAEL VARANO,** et al.,
Appellees.

No. 4D2024-1571

[June 11, 2025]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Charles E. Burton, Judge; L.T. Case No. 502022CA012286.

Robert J. Hauser of Sniffen & Spellman P.A., West Palm Beach, for appellant.

Jordan R. Hammer of Jordan R. Hammer, P.A., Boca Raton, for appellees Steven Varano and Vincent Michael Varano.

LEVINE, J.

Babette Varano ("the widow") appeals a final judgment, where the trial court determined that she was not entitled to proceeds, held in escrow, from the sale of a house in which she had a life estate. The trial court instead found that one of the remaindermen was entitled to the undistributed proceeds. We find that the trial court correctly concluded that the widow did not have a right to the escrowed proceeds, and consequently, to a determination of the value of her life estate. Because the widow possessed only a life estate, she could not sell a fee simple interest in the property and therefore was not entitled to the escrowed funds. As such, we affirm.

Previously, the widow and her husband ("the decedent") signed a deed conveying to themselves a life estate in their marital homestead property. The widow and the decedent did not have children together, but both have adult children from previous relationships. The widow's children had a one-half remainder interest in the property. The decedent created a trust for one of his children, Vincent Varano ("Vincent"), and that trust had the other one-half remainder interest. Significantly, the deed did not contain

any language granting the widow the authority to sell the home after the decedent's death.

The trust named the decedent's other son, Steven Varano ("Steven"), as trustee. However, a purported amendment to the trust subsequently named the decedent as trustee and the widow as successor trustee.

After the decedent's death, the widow, who had only a life estate in the property, then signed a contract to sell the property. Vincent opposed the sale and, as a result, filed suit and recorded a lis pendens. After the prospective buyer threatened litigation, the widow, the widow's children, and the decedent's sons signed a settlement agreement. Pursuant to the agreement, Vincent discharged the lis pendens and dismissed his lawsuit with prejudice. The agreement further provided:

- The widow would receive at least 50% of the net proceeds from the sale of the property;

- The trust would receive at least 22% of the net proceeds; and

- The remaining 28% of the net proceeds would be held in escrow pending further agreement between the parties or a judicial determination as to entitlement.

Shortly thereafter, the widow filed a petition for declaratory relief, seeking a determination that she was entitled to the remaining 28% of the escrowed proceeds. This amount would be in addition to the 50% she had already received under the settlement agreement, for a total of 78% of the sale proceeds.

Steven, who alleged he was still trustee, filed an answer and counterclaim, arguing that the widow, who possessed only a life estate, did not have the power to sell the property and that she had no interest in the proceeds of the sale. Subsequently, Steven moved for summary judgment, arguing that the widow unilaterally and impermissibly forced the sale of the property. Steven further argued that the widow had no interest in the escrowed monies and that the trust was entitled to one-half of the proceeds from the sale.

The widow responded that a life estate has a value, which is determined by life expectancy. She further argued that she had authority to sell a fee simple interest in the property because she was the trustee of the trust that had a one-half remainder interest, and she had permission from her children who held the other one-half remainder interest.

2

After a hearing, the trial court granted Steven's motion for summary judgment. The trial court found unavailing the widow's contention that the value of her life estate must be accounted for. The widow unilaterally forced a sale of the home upon the remaindermen. The trial court concluded that since the trust held a vested one-half tenant-in-common interest in the property at the time of the decedent's death, the trust was entitled to one-half of the proceeds from the sale of the home.

In denying the widow's motion for rehearing, the trial court stated that even if the widow was the trustee, she had a conflict of interest due to her dual role as a life estate holder of the property and trustee of the remainder trust in which she was not a beneficiary. Alternatively, if the widow was not the trustee, then the sale was unilateral. Under either scenario, according to the trial court, the widow would not be entitled to a pro rata share of the proceeds of the sale of the life estate. The trial court then entered a final judgment against the widow, ordering that the $281,435.35 in undistributed proceeds be transferred to the trust. The widow appeals from this final judgment.

On appeal, the widow agues the trial court erred in finding as a matter of law that she had no interest in the sale proceeds. According to the widow, the present value of her life estate, following the sale of the homestead, was a question of fact that depended on her life expectancy.

The standard of review for an order granting summary judgment is de novo. *Volusia Cnty. v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000). Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fla. R. Civ. P. 1.510(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

We find that the trial court did not err in granting summary judgment because the widow, who possessed only a life estate, could not sell a fee simple interest in the property. A "life estate" is defined as "[a]n estate held only for the duration of a specified person's life . . . ." Black's Law Dictionary (12th ed. 2024). The widow did not have a fee simple interest to sell. All that she had was a life estate. No more. No less. The deed signed by the widow and the decedent conveyed a life estate to themselves, with a one-half remainder interest in the widow's children and a one-half remainder interest in the trust. This deed did not contain any language reserving for the widow any right to sell the home.

A life tenant cannot convey an interest greater than what she owns.

3

*Chapman v. Chapman*, 526 So. 2d 131, 135 (Fla. 3d DCA 1988). "The duty owed by life tenants to remaindermen is comparable to that of a trustee or quasi-trustee, because the life tenant cannot injure the property to the detriment of the rights of the remaindermen." *Id.* "Ordinary life tenants may not permanently diminish or alter the value of the remaindermen's future estate . . . ." *Id.* In the absence of a "Lady Bird Deed," a life tenant cannot convey the property without the joinder of the remainderman. *Hirschenson v. Compu-Link Corp. of MI*, 389 So. 3d 574, 576 n.2 (Fla. 3d DCA 2023) (citation omitted).[1] Indeed, if a life tenant could sell the property in its entirety, there would be little difference between a life tenancy and fee simple ownership.

The widow claims that she had authority to sell the home because she had the consent of her children, who had a one-half remainder interest, and because she was trustee of the trust that held the remaining one-half remainder interest. We also agree with the trial court that, even assuming the widow was trustee, she lacked authority to bind the trust to the sales contract because the sale of the property presented a conflict of interest. "[A] trustee shall administer the trust solely in the interests of the beneficiaries." § 736.0802(1), Fla. Stat. (2023). "[A] sale . . . involving the investment or management of trust property . . . which is otherwise affected by a conflict between the trustee's fiduciary and personal interests is voidable by a beneficiary affected by the transaction unless" "[t]he transaction was approved by the court" or "[t]he beneficiary consented to the trustee's conduct." § 736.0802(2)(b), (d), Fla. Stat. (2023).

The widow had a personal interest in liquidating the property for her own economic gain, and a conflicting fiduciary duty to administer the trust in the interest of Vincent, the sole trust beneficiary. It goes without saying that it would not be in the trust's interest, as a 50% remainder beneficiary, to sell the property for only 22% of the sale proceeds. Nor was the sale approved by the court or by Vincent, as the beneficiary of the trust.

The widow does not cite any authority that would entitle her to the escrowed sale proceeds under the facts of this case. The widow also argues that *Smith v. Smith*, 600 S.W.2d 666 (Mo. Ct. App. 1980), which was cited by the trial court in the summary judgment order, is nonbinding and

---

[1] In a Lady Bird Deed, "the life tenant retains the right to convey or mortgage the property without the joinder of the remainderman." *Id.*

distinguishable.[2]   However, the trial court's order on motion for reconsideration explicitly stated that the trial court did not rely on *Smith*. Even if the trial court did rely on *Smith*, and even if the trial court's reliance on *Smith* was in error, the fact remains that the trial court still reached the correct result.

The widow additionally argues that the trial court improperly "penalized" her for selling the property.   Contrary to the widow's contention, the trial court merely found that the widow, as a life tenant, did not have the power to sell the property and, thus, was not entitled to the remaining 28% in undistributed sale proceeds.   The widow, in her petition for declaratory relief, sought a determination as to who was entitled to the escrowed funds.   Thus, the trial court made the very determination requested by the widow.

In summary, the trial court did not err in granting summary judgment, because the widow, as a life tenant, did not have the right to sell the property, and similarly was not entitled to the remaining 28% of the sale proceeds.  The trial court correctly concluded that the trust, as a one-half remainderman, was entitled to one-half of the sale proceeds.   Thus, we affirm.

*Affirmed.*

FORST and KUNTZ, JJ., concur.

*     *     *

**Not final until disposition of timely filed motion for rehearing.**

---

[2] *Smith* held that a life tenant was not entitled to immediate receipt of sale proceeds, but instead was entitled to income during his lifetime from the trust fund created by the sale.