ALTENBERND, Judge.
The Florida Birth-Related Neurological Injury Compensation Association (NICA) appeals a final judgment entered in favor of Danny Edwin Michael and Sharon Michael, as parents and guardians of Danny Edwin Michael, II. This case stems from a failed attempt to settle the final issues involved in a claim concerning birth-related neurological injuries to the Michaels’ son, Danny. That claim had already been resolved in an administrative proceeding in favor of the Michaels.
This lawsuit was initiated as an attempt to seek breach of contract damages for the failure of NICA to execute specific settlement documents. The trial court determined on a motion for summary judgment, as a matter of law, that NICA had breached an agreement to settle this dispute. Thereafter, it conducted nonjury trials to determine damages, attorneys’ fees, and costs. We conclude that the trial court erred in granting the summary judgment. There is, at least, a question of fact as to whether the parties had reached a settlement in this case that required NICA to sign the documents necessary for a specific structured settlement and to avoid reporting the settlement as potential income to the Internal Revenue Service.
NICA has also raised issues on appeal concerning the award of damages, including the award of attorneys’ fees and costs. Because we reverse this case on the issue of liability, we decline to address the remaining issues except to note that the trial court is not bound by the final judgment on remand concerning the award of fees and costs, which will undoubtedly change as a result of our ruling. Originally, the parties had agreed to have attorneys’ fees determined by the administrative law *66 judge following the contemplated settlement. We are inclined to believe that such a method to determine fees, at least through the time of the proposed settlement, would achieve a more accurate measure of that award.
The Michaels are parents of a boy, born in 1995, who has birth-related neurological injuries within the meaning of section 766.302(2), Florida Statutes (1995). In 1996, the Michaels filed a claim for benefits under the NICA statutes. Such claims are resolved administratively, and the administrative law judge issued a final order in favor of the Michaels in 1997. That order required NICA to make immediate payment of all expenses incurred and to pay for all future expenses. It also authorized an award of attorneys’ fees. The Michaels were represented by other counsel at that time.
Between 1997 and 2008, it appears that NICA and the Michaels were unable to agree on whether the Michaels were entitled to be compensated for the value of their time when they were providing care to Danny and, if so, how much compensation they should receive. The law firm currently representing the Michaels began that representation in October 2003. Thus, that firm’s primary task was to seek compensation for this contested benefit. At that time, the issue was still pending as an administrative matter before the administrative law judge. The law firm filed a petition to enforce the final administrative order. NICA contested the issue, and the matter was set for a final hearing in October 2005. The parties cancelled that hearing at a point when they believed a settlement had been achieved.
The basic elements of that settlement are not in dispute. As alleged in the Mi-chaels’ Second Amended Complaint, the parties agreed as follows:
a. To settle the Michaels’ claim for residential or custodial care and services from the date of the Minor Child’s birth on October 16, 1995 to June 7, 2002 for $384,640;
b. To settle the Michaels’ claim for residential or custodial care and services from June 7, 2002 to the present for $5,056.13;
c. To settle the Michaels’ claim for future residential or custodial care and services in accordance with paragraphs 2 and 3 of Mr. Gilbert’s October 13, 2005 letter to Mr. Labasky (Exhibit E);
d. The Michaels’ attorney’s fees and costs claims would be left to be determined by the DOAH ALJ; and
e. NICA would consider any suggestions so as to minimize the tax consequences that the Michaels may incur as a result of a lump sum payment.
NICA actually delivered a check in the amount of $384,640 to settle this claim. The sticking point arose because the $384,640 was compensation for services rendered by the Michaels between 1995 and 2002. It was income subject to immediate federal taxation. The Michaels wished to devise a method to avoid or defer payment of taxes on this income. As accurately described in the pleadings, NICA only agreed that it “would consider any suggestions so as to minimize the tax consequences.”
The Michaels’ advisors suggested that they structure the settlement using a non-qualified assignment and annuity to avoid immediate taxation. Such an annuity would earn tax-free interest and the Mi-chaels would be required to pay income tax only on the amount that they received each year. Their advisors suggested a method that provided for an immediate payment of $29,696.13, monthly payments of $2000 over ten years, and a final pay *67 ment of $256,260 in 2016. This amount totals more than $520,000.
The Executive Director of NICA is Ms. Kenney Shipley. She was the person responsible for making settlement decisions for NICA. It appears that most of her claims experience was governmental, and she had never been involved in a structured settlement. On November 11, 2005, the Michaels’ attorneys forwarded a settlement document to NICA’s attorney that was not, on its face, a settlement for $384,640, but rather a settlement describing NICA’s obligation to make these payments over ten years. The document contained language allowing NICA to enter into a non-qualified assignment with NAB-CO Assignments, Ltd. and allowing NAB-CO to assume this liability. Ms. Shipley objected to this document because she was concerned that it created potential long-term liabilities for NICA and she thought it was improper.
Following more discussions, the parties attended a hearing before the administrative law judge on January 4, 2006. The administrative judge ruled that he did not have jurisdiction to enforce a settlement. A few days later, the Michaels’ attorneys provided a revised settlement document that more expressly states that the Mi-chaels are releasing NICA in exchange for a payment of $384,640 and explains that NICA will pay $360,000 of the settlement to NAB CO to fund the stream of periodic payments. The document contains language of a nonqualified assignment, but it also contains language indicating that NICA will not be liable in the event that NAB CO fails to make the payments. Ms. Shipley apparently was still concerned about her authority to execute this agreement and testified that she had been advised that she would still need to issue a 1099 form showing the payment as income in the year that NICA provided the payment.
NICA is an unusual legal entity. It is an “association” that is either authorized or created by statute. See § 766.302(1). Its directors are appointed by the Chief Financial Officer of the State of Florida. It supposedly is not a state agency, but it is authorized to use the state seal. See § 766.315(1). Whether its Executive Director could sign binding documents obligating NICA to make periodic payments over many years, as contemplated in the November document, is unclear in this record. Nothing in this record establishes, as a matter of undisputed fact or law, that Ms. Shipley was acting in bad faith when she balked at these settlement proposals.
In hindsight, at this point, it would have been useful for the lawyers, Ms. Shipley, and the necessary experts to sit down together in one room and determine whether there was a way for NICA lawfully to assist the Michaels with a structured settlement that deferred income tax obligations. That did not happen.
Instead, on January 12, 2006, the Mi-chaels filed this lawsuit to enforce a settlement. They maintained that NICA was compelled to enter into a structured settlement that deferred tax payment. The complaint alleged both breach of contract and specific performance. For whatever reason, the lawsuit thereafter focused on the claim for breach of contract.
Both sides eventually moved for summary judgment, each side arguing that they were entitled to judgment on the issue of liability on the claim for breach of contract. The parties relied on the contents of the settlement correspondence and the deposition of Ms. Shipley.
We review orders granting or denying motions for summary judgment de novo. See Volusia County v. Aberdeen at Or *68 mond Beach, L.P., 760 So.2d 126, 130 (Fla. 2000). Summary judgment is appropriate only “if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law.” Id. “The moving party carries the heavy burden of showing conclusively that the non-moving party cannot prevail.” Shaw v. Tampa Elec. Co., 949 So.2d 1066, 1069 (Fla. 2d DCA 2007). “If the record reflects the existence of any genuine issue of material fact or the possibility of any issue, or if the record raises even the slightest doubt that an issue might exist, summary judgment is improper.” Holland v. Verheul, 583 So.2d 788, 789 (Fla. 2d DCA 1991).
Here, simply stated, NICA never expressly agreed that it would execute any specific structured settlement. The Mi-chaels needed to establish that, before they filed this lawsuit, Ms. Shipley or NICA was obligated to enter into a specific structured settlement agreement because NICA had agreed to consider suggestions to minimize tax consequences and the Michaels’ proposed structured settlement was so straightforward that NICA’s agreement to consider such suggestions compelled them to actually agree to the specific structured settlement. When the summary judgment was granted in this case, the record contained no undisputed evidence establishing as a matter of uncontested law that Ms. Shipley negotiated in error or bad faith when she balked at the various settlement proposals and that her agreement to consider such suggestions compelled her to execute any specific document. Accordingly, the trial court erred in granting this summary judgment.
Because the trial court erred in granting this summary judgment, we must reverse the final judgment, including the award of attorneys’ fees and costs. It is obvious that the parties nearly settled this case without judicial involvement. When the settlement collapsed, the dispute mushroomed and took on a new life of its own. In reversing this final judgment, we encourage the parties, on remand, to return to the settlement table and, perhaps with the assistance of an experienced mediator, attempt to resolve this dispute.
Reversed and remanded for proceedings not inconsistent with this opinion.
CASANUEVA, C.J., and KHOUZAM, J., Concur.