CORTINAS, J.,
(dissenting).
Tony Arce never had a chance. Not versus The Wackenhut Corporation. Not against the Federal Bureau of Investigation. Not even in court.
The facts are simple. Tony Arce worked at The Wackenhut Corporation as a background investigator. In 2003, Arce gave Wackenhut two-weeks notice that he was leaving his job. Arce had never been reprimanded at Wackenhut. Nevertheless, a mere three days before the end of his two-week notice period, Wackenhut reprimanded Arce for supposed sub-standard performance throughout the duration of his employment. Ah, a hail mary[4] reprimand. Sensing the hostility in the belated reprimand, Arce submitted a second resignation letter ending his employment on that same day.
In early March 2004, Arce submitted an application for employment with the Federal Bureau of Investigation. He received a conditional offer of employment from the FBI, subject to his passing a drug test, a polygraph test, and a background check. Arce passed the drug test and the polygraph test.
However, as part of the background check, the FBI contacted Wackenhut and, in mid-May 2004, spoke to Yanir Hill regarding Arce’s employment. Hill represented to the FBI that she was Arce’s supervisor and that Arce supposedly “worked under her direction to conduct background investigations.”[5] The Hill Transcript contained assertions that Arce “was not thorough” in conducting his investigations and that “[h]e would often not do criminal checks in some of the cities and counties where the applicants had lived” and that he “reported that he had done neighborhood investigations and had not done them.” Arce was further described as having “a very short fuse,” “not tak[ing] any corrective criticism,” “talking] too much while he was at work,” “not working] well under any form of stress,” and “on several occasions ... set[ting] his own flexible hours without getting permission.” The Hill Transcript additionally stated that Arce “put in a required two-week notice!,] but quit two days later with no explanation,” thus leaving Wackenhut “in a bind to quickly find someone to finish the background investigations.” Of course, Wackenhut neglected to tell the FBI that they decided to reprimand Mr. Arce three days before the end of his two-week notice period, thus prompting him to leave earlier than he had planned. Ultimately, Wackenhut described Arce as “not eligible for rehire” and “not perform[ing] as was required in the position as a background investigator for ... Wackenhut.”
Not at all surprisingly, with such a glowing recommendation from Wackenhut, it *818 took the FBI less than thirty days to rescind their job offer while noting that “[i]n [Arce’s] case, information that was developed concerning [his] employment history indicates that [he] would not be suitable for employment with the FBI.”
Based upon the Hill Transcript and finding no other negative information in the FBI Records pertaining to his background check, Tony Arce filed a complaint against Wackenhut alleging tortious interference with an employment , contract and business relationship and defamation. The complaint was later amended to seek punitive damages and was noticed for trial. Arce then went to court.[6]
The record demonstrates that Arce attempted to subpoena individuals within the FBI to testify as to whether the comments made by Hill contributed to the recission of the FBI’s conditional offer. The FBI objected to all such subpoenas and the testimony sought therein and exchanged correspondence with Arce regarding same. One of the letters received from the FBI specified that “if the court demands a written certification from the FBI for you to introduce as evidence the relevant documents Mr. Arce received through his FOIA request, the FBI would be willing to provide one.” Arce attempted to obtain certification from the FBI. While Arce was in the process of doing so, Wackenhut filed a renewed motion for summary judgment and motion in limine to exclude the FBI Reports as inadmissible hearsay. Following a hearing in June 2008, the motion for summary judgment was denied, and the case was apparently removed from the trial calendar; however, the record is unclear as to the disposition of Wacken-hut’s motion in limine at that time.[7] After further communication with the FBI, Arce received another letter (the “July 2008 FBI Letter”) specifying that Arce had not demonstrated his exploration of less burdensome alternatives to obtaining certification and that:
[I]n the vast majority of such cases, the parties are able to reach a stipulation to allow FBI documents to be admitted without placing an additional burden on the FBI. There is no indication that you have attempted any such stipulation with the other party/ies to the litigation .... it is not clear whether, or why, the court would refuse to accept the cover letter typically sent to recipients of FOIA releases in lieu of imposing additional burdens on the government, or whether you have even explored that question.
(Emphasis added). Moreover, while noting that the certification requirements sought by Arce pursuant to sections 90.803(8) and 90.902, Florida Statutes, would be unduly burdensome, the FBI further stated that Arce
[Had] given [the FBI] no indication that the court is in fact requiring the burdensome certification that [Arce was] demanding or that [Arce has] attempted any of a number of possible avenues which would be less burdensome to the government. For all the above reasons, we cannot provide you with the confirmation you are seeking.
Following receipt of the FBI letter, Arce attempted to secure a stipulation from *819 Wackenhut as to the authenticity of the FBI Records. Wackenhut, in turn, unequivocally stated on more than one occasion that it “will not so stipulate.” Despite being aware that Arce was attempting to secure certification from the FBI, Wacken-hut re-noticed the matter for trial shortly after Arce’s receipt of the July 2008 FBI Letter, and the matter was set for trial in early November 2008. The railroading of plaintiffs case had commenced. Arce thereafter filed a motion in limine to have the trial court issue an order specifying the certification required for the FBI Records to be admitted into evidence. The motion in limine also requested that the trial court again remove the action from the trial calendar.
It appears that Arce attempted to set his motion in limine for hearing on a motion calendar, but the matter was eventually removed because the trial judge would not hear motions in limine during his motion calendar. In late October 2008, shortly before the re-scheduled trial was to commence, the trial court heard arguments as to Wackenhut’s and Arce’s motions in limine (the “October 2008 Hearing”).[8] Without the trial court’s order requiring Arce to obtain certification from the FBI, which was a mere formality which the FBI had required prior to certifying the documents, Arce was not able to have the FBI records certified, much less admitted as evidence. The trial court then granted Wackenhut’s motion and “precluded [Arce] from advancing any arguments, introducing any evidence or testimony, or relating to or referring to in any way for any purpose, any of the FBI documents or the contents thereof attached to Wackenhut’s Motion in Limine ... during the trial of this action.” Following the exclusion of the evidence that essentially formed the basis for Arce’s allegations, the trial court entered summary judgment. The railroading of Tony Arce’s case was now complete.
Mr. Arce then appealed the orders granting summary judgment and Wacken-hut’s motion in limine. At or about the same time that Arce filed his notice of appeal, the trial court entered an order denying Arce’s motion in limine. While Arce’s appeal was pending, the trial court entered a final judgment in favor of Wack-enhut. Arce then amended his notice of appeal to include the final judgment.
At issue in this appeal is the trial court’s granting of Wackenhut’s motion in limine as it is the lynchpin to the survival of the summary and final judgments. A ruling on the admissibility of evidence is reviewed for abuse of discretion. See M.S. v. Dep't of Children and Families, 6 So.3d 102, 103-04 (Fla. 4th DCA 2009) (citing Nardone v. State, 798 So.2d 870, 874 (Fla. 4th DCA 2001)); see also H & H Electric, Inc. v. Lopez, 967 So.2d 345, 347 (Fla. 3d DCA 2007). At the October 2008 Hearing, Arce clearly alerted the trial court to the existence of his motion seeking a directive from the court as to the certification required from the FBI. Given the correspondence from the FBI demonstrating at least some degree of willingness to provide certification if so specified by court order, the trial court unquestionably abused its discretion by not providing such an order. Absent an actual order from the trial court, it is impossible to conclusively determine whether the FBI would have provided a certification to the trial court’s satis *820 faction. What is clear is that the FBI would not certify the records without a court order that was unreasonably withheld.
Specifically, section 90.803, Florida Statutes, provides, in pertinent part:
Hearsay exceptions; availability of de-clarant immaterial. — The provision of s. 90.082 to the contrary notwithstanding, the following are not inadmissible as evidence, even though the declarant is available as a witness:
(6) RECORDS OF REGULARLY CONDUCTED BUSINESS ACTIVITY.—
(a) A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinion, or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity and if it was the regular practice of that business activity to make such memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or as shown by a certification or declaration that complies with paragraph (c) and s. 90.902(11), unless the sources of information or other circumstances show lack of trustworthiness. The term “business” as used in this paragraph includes a business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.
[[Image here]]
(c) A party intending to offer evidence under paragraph (a) by means of a certification or declaration shall serve reasonable written notice of that intention upon every other party and shall make the evidence available for inspection sufficiently in advance of its offer in evidence to provide to any other party a fair opportunity to challenge the admissibility of the evidence.
(Emphasis added). Section 90.902(11), Florida Statutes, provides:
(11) An original or a duplicate of evidence that would be admissible under s. 90.803(6), which is maintained in a foreign country or domestic location and is accompanied by a certification or declaration from the custodian of the records or another qualified person certifying or declaring that the record:
(a) Was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person having knowledge of those matters;
(b) Was kept in the course of the regularly conducted activity; and
(c) Was made as a regular practice in the course of the regularly conducted activity!.]
(Emphasis added).
If Arce were to comply with certification requirements, the FBI Records would likely be admissible under the exception set forth in section 90.803(6), because they are records of “acts, events, conditions, opinion, or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge,” in this case memorializing the statements made by Wack-enhut’s representative during the FBI’s background investigation, which in light of its hiring procedures was in “the course of a regularly conducted business activity and ... it was the regular practice of that business activity to make such memorandum, report, record, or data compilation ...” See § 90.803(6), Fla. Stat. Given the importance of this potentially admissible evidence to appellant’s case, the trial court erred by granting Wackenhut’s motion precluding the introduction of the FBI *821 Records into evidence and denying Arce’s motion for an order outlining the manner of certification required by the trial court.
Waekenhut further argues that even if the FBI Report is not inadmissible hearsay, any statements made by Hill are protected under section 768.095, Florida Statutes, which provides:
An employer who discloses information about a former or current employee to a prospective employer of the former or current employee upon request of the prospective employer or of the former or current employee is immune from civil liability for such disclosure or its consequences unless it is shown by clear and convincing evidence that the information disclosed by the former or current employer was knowingly false or violated any civil right of the former or current employee protected under chapter 760.
(Emphasis added).
Waekenhut also asserts that even if the FBI Report is admissible as evidence, Hill’s statements are similarly protected by section 943.134(2)(a), Florida Statutes, which states:
When a law enforcement officer, correctional officer, or correctional probation officer, or an agent thereof, is conducting a background investigation of an applicant for temporary or permanent employment or appointment as a full-time, part-time, or auxiliary law enforcement officer, correctional officer, or correctional probation officer with an employing agency, the applicant’s current or former employer, or the employer’s agent, shall provide to the officer or his or her agent conducting the background investigation employment information concerning the applicant. The investigating officer or his or her agent must present to the employer from whom the information is being sought credentials demonstrating the investigating officer’s employment with the employing agency and an authorization form for release of information which is designed and approved by the Criminal Justice Standards and Training Commission.
[[Image here]]
(5) An employer who discloses employment information under this section is immune from civil liability for such disclosure or its consequences as provided in s. 768.095.
Section 768.095 clearly excepts information disclosed by the former employer that is knowingly false. The record in this case demonstrates inconsistencies between the assertions in the Hill Transcript and the testimony given by Hill and Esquivel. These inconsistencies create genuine issues of material fact and therefore preclude summary judgment. See Sbory v. Am. Optical.Corp., 958 So.2d 474, 475-76 (Fla. 4th DCA 2007); see also Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000). Moreover, any questions regarding the veracity of the statements in the Hill Transcript, would be within the province of the finder of fact and raise genuine issues of material fact sufficient to preclude summary judgment.
For the foregoing reasons, I would reverse the orders granting Wackenhut’s motion in limine and denying Arce’s motion in limine, and consequently reverse the summary and final judgments entered in favor of Waekenhut.

. A pass or play in American football referring to a very long forward pass or long bomb in desperation with only a small chance of success, especially one thrown at or near the end of the game.

. See Koch Jr., Howard W. (Executive Producer), & Hoblit, Gregory (Director). (1996). Primal Fear [Motion Picture], United States: Paramount Pictures.

. Arce had filed a notice of trial in December 2007, and pursuant to the trial court's order, the case was set for trial in April 2008 and later continued to June 2008. At the June 2008 hearing on Wackenhut’s motion for summary judgment, the case was apparently removed from the trial calendar.

. The record does not contain the notices of hearing, so it is unclear exactly what was set for hearing before the court. Based upon the transcript of the October 2008 Hearing, it appears that Wackenhut’s motion in limine was to be heard, but Arce advised the court of the nature of his own motion in limine and the reason it was taken off the motion calendar.