BOLES, W. JOEL, Associate Judge.[1]
In this personal injury action, plaintiff Steven Wood appeals a final sum *66 mary judgment entered in favor of the defendant, Southern Crane Service, Inc., in which the trial court found as a matter of law that Southern Crane was entitled to “immunity” from suit because the presence of a forty-ton mobile crane brought in by the contractor to assist in the removal of a massive oak tree on residential property converted the otherwise non-construction tree removal operation to a construction project. We review an order granting a motion for summary judgment based on workers’ compensation immunity under the de novo standard of review. See Schroeder v. Peoplease Corp., 18 So.3d 1165, 1168 (Fla. 1st DCA 2009) (citing Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000)).
Because we conclude that the use of the crane did not cause the tree removal project to fall within the construction industry, we reverse the trial court’s ruling and remand for further proceedings. Wood raised a second issue involving the number of employees that were employed by the contractor, Arbor Pro, for this project. We do not address this point because the trial court made no findings regarding the number of employees on the project. Moreover, as will be discussed below, the parties stipulated that Arbor Pro did not have any employees at the time of the project. Our resolution of Wood’s first issue serves to further illuminate this point.
The parties submitted a stipulation of facts which were recited by the trial court at the summary judgment hearing. The transcript reflects that the stipulated statement of facts, in relevant part, is as follows:
The mishap occurred on August 23, 2007.
The mishap occurred while Steven Wood was performing services as a tree climber while removing a tree ... [at] a residential property owned by Mr. Harry C. Futch, Junior.
Mr. Futch contracted Mr. McCammon as the owner of Arbor Pro to have Arbor Pro remove a large oak tree on his property.
Mr. Futch retained Arbor Pro to remove a tree from Mr. Futch’s residential property.
Keith McCammon is self-employed in his business[,] Arbor Pro.
Arbor Pro provides tree care services.
Arbor Pro is not registered with the State of Florida as a corporation, LLC, et cetera.
Arbor Pro is a sole proprietorship owned and operated by Keith McCammon.
Keith McCammon performed the meeting with Mr. Futch to assess the tree and provided [an] estimate for removal of the oak tree.
Due to the large size of the tree, Mr. McCammon subcontracted with Southern Crane for a crane and crane operator to assist in the tree removal process.
The tree was approximately 75-feet tall and 75-feet wide.
It was a dinosaur.
It required a crane to assist in the removal.
The project commenced on August 27th, 2007.
The people working on the job were Steve Wood, Bill Aires, Bill’s friend Yoke, Southern Crane’s crane operator Michael Negron, and Keith McCammon was present during parts of the day— *67 parts of the first day of the job and was not present on the job on the second day when the mishap occurred.
The only person working on the job site who could provide a first name for Yoke is Bill Aires, which he believes to be Yophear, Y-o-p-h-e-a-r.
No one else working on the project knew the first or last name of Bill’s friend Yoke.

In August 2007, Arbor Pro did not have any employees.

All of the people working on the tree removal project were subcontractors.

Mr. Wood was a contractor that Arbor pro would call when they needed a climber.
Mr. Wood’s work with Arbor Pro was on a per-job basis. The basis for working a job would be based on which company would pay Mr. Wood the most for his services.
It was customary for climbers in Jacksonville to bounce from tree service company to tree service company because they would go to the place where they had work coming in.
Mr. Wood provided all of his own safety equipment, climbing equipment, and tools necessary to complete his work as a tree climber.
Arbor Pro did not direct Mr. Wood in any way on how to take down the tree.
All of the contractors working on the subject property were paid by Arbor pro on a daily basis.

At all times material, Arbor Pro did not secure workers’ compensation coverage.

At all times material, Southern Crane secured workers’ compensation coverage for its employee, Michael Negron.
(Emphasis added.)
Section 440.09(1), Florida Statutes (2007), provides: “The employer must pay compensation or furnish benefits required by this chapter if the employee suffers an accidental compensable injury or death arising out of work performed in the course and scope of employment.” Section 440.02(17)(b)2., Florida Statutes (2007), defines “employment” as including “[a]ll private employments in which four or more employees are employed by the same employer or, with respect to the construction industry, all private employment in which one or more employees are employed by the same employer.” (Emphasis added). Section 440.10(1)(a), Florida Statutes (2007), again holds every employer, contractor, and subcontractor liable for securing compensation for his or her employees. More specifically, section 440.10(1)(b) states:
(b) In case a contractor sublets any part or parts of his or her contract work to a subcontractor or subcontractors, all of the employees of such contractor and subcontractor or subcontractors engaged on such contract work shall be deemed to be employed in one and the same business or establishment, and the contractor shall be liable for, and shall secure, the payment of compensation to all such employees, except to employees of a subcontractor who has secured such payment.
The trial court determined that the stipulated facts brought this case within the terms of section 440.10(1)(b), meaning it involved a contractor — Arbor Pro — subletting a part of its work to a subcontractor— Southern Crane — such that, under the provisions of section 440.10(1)(b), Arbor Pro was required to secure payment of compensation for all the employees on the project, except for Southern Crane’s employee, for whom Southern Crane had already secured compensation. The parties stipulated that Arbor Pro had no employees on the job site; thus, it fell to the trial *68 court to glean from Chapter 440 whether Wood could otherwise be deemed a statutory “employee.” The trial court did so by concluding as a matter of law that the tree removal project involving a crane was one which fell within the construction industry. Thus, under section 440.02(17)(b)2., Arbor Pro’s “employment” contemplated only “one or more employees.” Further, under the terms of section 440.02(15)(c)3., Florida Statutes (2007), Wood is deemed to be Arbor Pro’s “one” statutory employee, where “employee” is defined as “[a]n independent contractor working or performing services in the construction industry.” § 440.02(15)(c)3., Fla. Stat. (2007). Consequently, as the argument was presented to the trial court, Southern Crane would then be entitled to “immunity” from suit under section 440.10(1)(e), Florida Statutes (2007), which provides in pertinent part as follows:
A subcontractor providing services in conjunction with a contractor on the same project or contract work ... is protected by the exclusiveness-of-liability provisions of s. 440.11 from any action at law ... on account of injury to an employee ... of the contractor ...
(Emphasis added.)
Section 440.02(8), Florida Statutes (2007), defines the construction industry as follows:
“Construction industry” means for-profit activities involving any building, clearing, filling, excavation, or substantial improvement in the size or use of any structure or the appearance of any land. However, “construction” does not mean a homeowner’s act of construction or the result of a construction upon his or her own premises, provided such premises are not intended to be sold, resold, or leased by the owner within 1 year after the commencement of construction. The division may, by rule, establish standard industrial classification codes and definitions thereof which meet the criteria of the term “construction industry” as set forth in this section.
Southern Crane argues that the removal of any tree falls under the definition of “construction industry” because the tree removal would constitute “clearing” or “substantial improvement in the appearance of any land,” as specified in the statute. We disagree with this position. The parties submitted to the trial court Florida Administrative Code Rule 69L-6.021, in which the Division of Workers’ Compensation adopted “the classification codes and descriptions that are specified in the Florida Contracting Classification Premium Adjustment Program, and published in the Florida exception pages of the National Council on Compensation Insurance, Inc. (NCCI), Basic Manual (October 2005 ed.).” See Fla. Admin Code R. 69L-6.021(1). The rule lists the classification codes and descriptions, and also adopts “the definitions published by NCCI, SCOPES® of Basic Manual Classifications,” which sets forth definitions “identifying] the workplace operations that satisfy the criteria of the term ‘construction industry’ as used in the workers’ compensation law.... ” Fla. Admin. Code R. 69L-6.021(3).
Specifically, Southern Crane pointed out the following construction codes to support its position that this tree removal project fell within the “construction industry”:
(a) 0042 Landscape Gardening and Drivers
(gggg) 9534 Mobile Crane and Hoisting Service Contractors — NOC—All operations — Including Yard Employees and Drivers.
*69 See Fla. Admin. Code R. 69L-6.021(2)(a) & (gggg).[2]
In response, Wood referenced the following non-construction code located in the SCOPES® Manual to support his position that the tree removal project did not fall within the “construction industry”:
0106 Tree pruning, spraying, repairing — all operations & drivers.
The trial court considered the relevant codes and correctly determined that the simple pruning, trimming, spraying, repairing of trees, or the cutting down of trees did not fall within the construction industry. However, because the tree removal was “done with a big crane,” the court found the tree removal, in this case, fell “within the construction industry.” Hence, it appears that the presence of the crane became the sole measure by which the tree removal operation was classified as construction by the trial court. We, on the other hand, are persuaded to interpret the applicable statutes and rules differently-
In a note, the SCOPES® Manual describes code 0106 in the following manner:
Applicable by job site to tree pruning contracts requiring any above-ground level work. Code 0106 applies to the whole contract including, but not limited to, chipping and cleanup activities ... [U]nder Code 0106 a tree is removed by cutting it into sections. Also due to limited clearance from structures, a guide rope is used as needed to direct the fall of the tree.
See National Council on Compensation Insurance Scopes® Manual (2001 ed., revisions effective Oct. 1, 2005) (Code 0106-Tree Pruning, Spraying, Repairing) (emphasis added). By its language, non-construction code 0106 expressly contemplates not only tree pruning, but the removal of the tree itself. Although it may be argued that the removal of any tree can be classified as “clearing” and/or an activity that “substantially improves the appearance of land,” the Division, by its adoption of the Scopes® Manual, determined that tree pruning and removal are non-construction activities.
The manual goes on to describe code 0106 as applying to “specialist contractors who use hand tools or mechanical equipment to prune, spray, repair, trim, or fumigate trees,” and states that “[t]hese operations may be performed from ground level or by climbing the tree, or may require the use of ladders and/or aerial buckets.” Id. The record establishes that all of these systems were utilized to remove the oak tree.
But, more to the point, the manual’s definition of “Mobile Crane and Hoisting Service Contractors” specifically provides that code 9534 is assigned to jobs “[wjhen mobile crane, hoisting or rigging operations are performed by an insured as a normal and incidental part of the insured’s construction or erection operations See National Council on Compensation Insurance Scopes® Manual (2001 ed., revisions effective Nov. 1, 2002) (Code 9534-Mobile Crane and Hoisting Services) (emphasis added). When a mobile crane is used in an operation for which mobile cranes “are not ordinarily contemplated,” the appropriate code is assigned to the primary operation and code 9534 is assigned to the mobile crane. Id. The manual gives as an example the scenario where “a contractor is engaged to perform paving operations and provide mobile crane ... services at a particular job.” Id. It goes *70 on to explain, “As paving work does not ordinarily contemplate mobile crane ... operations, the appropriate paving code is assigned to the paving work and Code 9534 is assigned to the mobile crane ... operations.” Id. (emphasis added).
Because the record does not establish that mobile cranes were “a normal and incidental part” of Arbor Pro’s tree pruning and removal services at the time of the accident, the clear language of the Scopes® Manual dictates that non-construction code 0106 must be assigned to Arbor Pro’s tree pruning and removal operations, while construction code 9534 would be assigned solely to Southern Crane’s crane operations. As such, Arbor Pro was not acting as a construction contractor and, therefore, had no obligation under section 440.10 to secure workers’ compensation for Wood, who could not be considered as a statutory employee under section 440.02(15)(c)3. Consequently, Southern Crane, as the subcontractor, could not claim the “exclusiveness-of-liability” benefit conferred by section 440.10(1)(e), which, by its plain language, requires there to be injury to an “employee ... of the contractor....” Cf. Lovering v. Nickerson, 72 So.3d 780 (Fla. 5th DCA 2011) (reversing summary judgment in favor of the subcontractor on issue of workers’ compensation immunity, where the record evidence did not support the conclusion that the injured plaintiff was a statutory employee of the general contractor).
The Final Summary Judgment is REVERSED, and the cause is REMANDED for further proceedings.
CLARK and MARSTILLER, JJ., concur.

. Judge Joel W. Boles, sitting as an associate judge on this Court for this case, and current *66 ly serving as a circuit court judge for the First Circuit, is not related in any degree to B.B. Boles III, of the firm of Young, Bill, Roumbos & Boles, P.A., representing appellee.

. "NOC” stands for " ‘not otherwise classified,' meaning that no other classification code more specifically describes the business activity.” Ficocelli v. Just Overlay, Inc., 932 So.2d 1230, 1233 (Fla. 1st DCA 2006).