SALTER, J.
The Weitz Company, LLC, a general contractor, appeals a final summary judgment in favor of a waterproofing subcontractor, MCW Acquisitions, LLC. We reverse, finding that a legal issue and genuine issues of material fact precluded summary judgment.

The Project, the Subcontract, the Acquisition, and the Prior Lawsuit

Weitz was the general contractor for an assisted care living facility known as Classic Residences by Hyatt at Aventura. The original (2002) waterproofing subcontractor for the project was Metro Caulking & Waterproofing, Inc.
The assets and business of Metro Caulking were bought in March 2003 by the defendant/appellee, MCW, just as much of the relevant construction activity at the project was winding down. Under paragraph 4.E of the detailed purchase and sale agreement between Metro Caulking as seller and MCW as buyer, MCW expressly assumed Metro Caulking’s obligations under “Other Contracts” enumerated in Exhibit H to the agreement.[1] Ex *625 hibit H was Metro Caulking’s computer printout of over 280 “open jobs” to be assumed by MCW, which included the project (Job 02069, “Classic Residence Aven-tura”).
Following the closing of the sale, MCW performed punch-list caulking and waterproofing at the project and submitted two applications for payment to Weitz. According to interrogatory answers and the daily job logs filed below, MCW personnel performed some waterproofing work at the project after the Metro Caulking-MCW sale closed. Although the Weitz-Metro Caulking subcontract prohibited an assignment of Metro Caulking’s rights to another entity without the prior written consent of Weitz,[2] both Weitz and MCW performed the balance of their work at the project as if the requisite consent had been granted or waived.
In 2006, the developer/owner sued Weitz and others in federal court in Miami claiming defective construction and design of the project. Weitz filed a third-party claim against Metro Caulking in the lawsuit. MCW was not joined as a defendant or third-party defendant in the action. An affidavit submitted on behalf of Weitz in the circuit court stated that remedial work for the defective waterproofing and caulking cost in excess of $4.8 million.
The developer/owner’s federal lawsuit against Weitz and Metro Caulking was settled in 2010. As part of the settlement, Weitz, Metro Caulking, and Metro Caulking’s insurer entered into a detailed settlement agreement with incorporated releases. MCW was not a party to the agreement. The release provisions in-eluded a carveout for any claims Weitz had or might have had against MCW:
Notwithstanding the above or anything in this Agreement to the contrary, Weitz does not release any Claims it had, has or may have against [MCW], including but not limited to, Claims for negligence, breach of contract, contribution and/or indemnification or any other cause of action related to or arising out of or in connection with work performed by [MCW] at the Project as a subcontractor in its own right, as a successor entity to Metro, or pursuant to any agreement between [MCW] and [Metro Caulking],
Five months later, Weitz filed a circuit court lawsuit against MCW asserting claims for breach of the subcontract assumed by MCW, breach of MCW’s indemnity obligations, negligence in the performance of its work, common law indemnity for the damages paid by Weitz to the owner, and breach of MCW’s warranty obligations to Weitz.[3] After various pretrial proceedings and discovery, MCW moved for summary judgment. MCW argued that it was undisputed that: (1) Metro Caulking, not MCW, performed the waterproofing work that was alleged by the owner and Weitz to have been defective; (2) any work performed by MCW after assuming Metro Caulking’s open contracts was incidental “punch-list” work that was not implicated in the leaks and construction or design defects; and (8) Weitz was not entitled to claim third-party beneficiary rights under the Metro Caulking-MCW asset purchase agreement.
In opposition to MCW’s motion, Weitz filed a summary of undisputed material *626 facts and applicable documents, together with the affidavit of a former Weitz vice president who had been in charge of Weitz’s subcontracts and work on the project. The former vice president stated under oath that: MCW “continued to perform punch list and warranty work” at the project for several years after the March 2003 purchase of assets by MCW; MCW “billed Weitz for the completion of the [Metro Caulking] subcontract,”; MCW executed and delivered a partial lien waiver to Weitz with respect to its post-purchase work on the project; and the federal lawsuit by the owner/developer claimed “damages incurred, in part, as a result of [Metro Caulking’s] and MCW’s work at the project.”
The circuit court granted MCW’s motion for summary judgment. Weitz’s motion for reconsideration was denied, a final summary judgment was entered, and this appeal followed.

Analysis

Under Florida Rule of Civil Procedure 1.510(c) and Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000), MCW was entitled to summary judgment only if the pleadings, affidavits, depositions, discovery responses, and other evidence in the record establish that there is no genuine issue of material fact, and that the movant is entitled to such a judgment as a matter of law. Our review is de novo.
We reverse for two independently sufficient reasons. Under the March 2003 purchase agreement, Metro Caulking expressly assigned to MCW all rights of MCW under the Weitz-Metro Caulking subcontract, and MCW expressly assumed all of the obligations and liabilities of Metro Caulking under that contract “arising after the closing date.” And because the affidavit of Weitz’s former vice president and other summary judgment evidence dispute MCW’s claim that all the defective work was completed by Metro Caulking before the closing of the purchase agreement, a genuine issue of material fact also precluded summary judgment.
A. Assignment and Assumption
MCW argues that Weitz was not a party to, or third-party beneficiary of, the Metro Caulking-MCW purchase agreement provisions whereby MCW expressly assumed Metro Caulking’s liabilities to Weitz. MCW’s argument is based in part on the undisputed fact that Weitz never approved Metro Caulking’s assignment of its contract with Weitz to MCW in the purchase agreement, and the waterproofing subcontract expressly precluded assignment without Weitz’s prior written consent.
The argument fails because the enforcement of the anti-assignment provision is a matter within Weitz’s discretion, not MCW’s. MCW and Metro Caulking either ignored the anti-assignment provision or assumed (correctly) that Weitz would not refuse to consent to the assignment and assumption. After the Metro Caulking-MCW purchase agreement was closed, both Weitz and MCW continued to proceed as contractor and subcontractor on the job. MCW submitted a lien waiver, applications for payment, and a warranty in conformance with the assigned subcontract. MCW’s forces performed post-closing work on the job. Such conduct establishes consent, or the waiver of the right to withhold consent, to the assignment, and in any event the assignee is estopped to contest the validity of its own action. Horatio Enters., Inc. v. Rabin, 566 So.2d 73 (Fla. 3d DCA 1990); In re Marineland Ocean Resorts, Inc., 242 B.R. 748, 757 (Bankr.M.D.Fla.1999).
MCW next argues that Weitz may not enforce MCW’s written agreement *627 with Metro Caulking that MCW would assume and perform Metro Caulking’s liabilities to Weitz. This argument is unavailing because of the express language in the subcontract assumed by MCW, which obligated Metro Caulking and its successors and assigns to fully perform all covenants of the subcontract documents.[4] MCW sought and obtained assignment of Metro Caulking’s rights relating to the Classic Residences project. The quid pro quo was MCW’s express assumption of Metro Caulking’s post-closing liabilities associated with the project. The tail goes with the hide.
B. Scope of Work
MCWs evidence that its post-closing work on the project was de minimis may carry the day at trial, but on this record the scope of that work is in dispute. The causation possibilities inherent in water leaks in South Florida structures generally, and in this project in particular, are fact-intensive. Whether the leaks occurred as a result of faulty design or specifications, whether the waterproofing materials were defective or inappropriate for this application, and whether the leaks were a result of pre-closing work by Metro Caulking’s forces or post-closing work by MCW’s forces, are disputed factual issues on this record. Because there is not a “complete absence of evidence to support the plaintiffs claims,” the final summary judgment must be reversed. Laschke v. Brown & Williamson Tobacco Corp., 766 So.2d 1076, 1077 (Fla. 2d DCA 2000).

Conclusion

MCW assumed Metro Caulking’s obligations to Weitz, and MCW performed waterproofing work after the assumption of those obligations that Weitz alleges was within the scope of the owner’s claims against Weitz for defective work. While we express no opinion regarding the merits of Weitz’s claims against MCW, we conclude that MCW did not carry its burden under the exacting standards applicable to summary judgments.
Reversed and remanded for further proceedings.

. Metro Caulking also assigned to MCW all of Metro Caulking's rights under the "Other *625 Contracts.”

. Section 11.3 of the standard terms and conditions in the subcontract.

. Exhibit B to Weitz's complaint below is a written warranty on the letterhead of MCW provided pursuant to the terms of the subcontract and dated approximately seven months after MCW assumed the contractual obligations of Metro Caulking.

. Weitz-Metro Caulking subcontract, section 11.7. These included the obligation to remedy or repair defective work identified after the Metro Caulking/MCW closing, because the pertinent post-closing warranty and breach claims "arose” after closing.