SALTER, J.
Ocean Two Condominium Association appeals a final judgment denying the foreclosure of alleged liens on two condominium units owned by Gregory and Faina Kliger. The result turns on the Kligers’ right to make partial payments during the pendency of their dispute with the Association. We affirm the trial court’s determination that the Association and its management company improperly refused a tendered payment in the early part of the dispute, with the result that the lien foreclosure action was premature.
The problem that arose in this case is a common one, unfortunately. For one reason or another, a unit owner falls behind in payment. If efforts to resolve the problem are unavailing, the condominium association — usually through a management company — turns the matter over to the association’s attorneys for the imposition of a lien and the commencement of a lien foreclosure action. If, as here, the unit owners wish to dispute part of the association’s claim (interest and attorney’s fees, for example), and to pay the undisputed monthly maintenance amounts, there is evidently a misapprehension by some management companies and associations that they should reject any such partial payment. Apparently the reason — not recognized in the condominium statute — is that the association’s claim will be waived or impaired if a partial payment is accepted after “it’s been turned over to the attorneys.”
Because of the statutory lien rights and the power to prosecute the foreclosure action, an association and its attorneys have ample leverage, and the unit owners have very little. Every telephone call, meeting, or hearing regarding the genesis of the dispute and the amount due produces an incremental unit of attorney billings, and every day until resolution of the dispute increases the interest tariff.
This system is not unfair and functions appropriately when the unit owners have no bona fide basis for dispute. But when the unit owners do have a good faith argument for disputing the billings, the interest, late charges, or attorney’s fees, the lien amount can become a moving target for the unit owners. It becomes cheaper for the unit owners to settle above what they actually owe than to continue the dispute.
In this case, the Kligers used a direct debit “Sure Pay” account to pay maintenance fees. The Kligers asserted at trial that their Sure Pay account was inadvertently debited for three months after they *741 sold another unit in the same condominium, with the result that the balance in the account was insufficient to cover the charges for their two remaining units in January 2004. The Association presented evidence to the contrary, but it is undisputed that once the Kligers received billings showing insufficient funds in the Sure Pay account and arrearages (including late charges and bank fees) for January and February 2004, they tendered checks to the management company for the Association in an effort to bring current all undisputed monthly maintenance fees.[1] The evidence showed, however, that the tendered checks were refused by the management company because the Kligers’ account had been turned over to the Association’s attorneys and accepting a payment “might jeopardize the hen.”[2]
No such prejudice or jeopardy can occur under the statute, however, because it specifically provides that the payments will be applied on account, without prejudice to the association’s and unit owner’s respective positions, even if the unit owners place a “restrictive endorsement, designation, or instruction ... on or accompanying the payment.” § 718.116(3), Fla. Stat. (2004) (emphasis added). Had the Association accepted and applied the tendered payments, the dispute would have been reduced to an inconsequential amount, and the Association’s attorneys could not in good faith have filed to foreclose the miniscule claim remaining.[3]
The trial court’s determination that the Association’s foreclosure suit was premature is supported by competent substantial evidence. The cautionary point is that a management company, Association, or Association attorney rejects a tendered payment at its peril (but in accepting and applying the payment is protected from a claim of waiver or accord and satisfaction by the express language of the statute). The receipt and application of a payment— even a payment less than the amount computed by the Association or its attorneys, and even a payment which does not completely resolve the dispute — reduces the amount in controversy, reduces the accrual of interest, and increases the likelihood of a negotiated resolution of the balance of the dispute. And that is a good thing, in stark contrast to what happened here.
In this case, the attorneys for the Association also rejected partial payments by the Kligers in March 2004. A “supervisor” for the law firm, signing under the name of *742 the law firm but not admitted to The Florida Bar or appearing on the law firm’s letterhead, returned each check with a statement that the attempted payment “does not represent payment in full of the above referenced matter.”[4] In this case, a non-lawyer did, in the name of a law firm, precisely what no lawyer is supposed to do — reject a payment tendered to reduce the amount in controversy in a collection action — despite the clear protection of section 718.116(3)[5] and the well-known duty to mitigate. We are not persuaded, therefore, by the Association’s argument here that the trial court’s ruling will unfairly “saddle the Kligers’ neighbors” with the legal fees incurred by the Association but not recovered from the Kligers. Because the Association, its management company, and its attorney improperly rejected payments, we question whether such fees were ever earned in this case.
Affirmed.

. The Kligers initially delivered paper checks dated February 1, 2004 to replace the unsuccessful “Sure Pay” automatic debits, but the checks were drawn on the same bank and bank account as the "Sure Pay” debits and were also returned for insufficient funds. After realizing this, on March 8, 2004, the Kli-gers brought new and “good” checks to the property management office, but these checks were refused. The record indicates that the Kligers had been on direct debit payments without incident for three units over a two-year period before the problem with the January 2004 debits.

. This was the testimony of the management company representative assigned to accounts receivable for the Association. A handwritten note by the property manager on the Kligers’ letter tendering the payments also stated that the Kligers’ account "is in the attorney’s hand for collection and we are not permitted to interfere with that process.” The Kligers, intent upon trying to keep their account current, then made direct deposits to the Association’s bank account.

.Because of the duty of all litigants in Florida to mitigate damages, attorneys and associations expending $215 (the filing fee when the case was filed) to launch a lien foreclosure to collect on a $25 account balance (plus at most, if a lien form has already been recorded, a paralegal fee and costs for preparing and filing the standard form) would be expected to make a renewed, good faith effort to settle the matter before commencing a lawsuit.

. The Association's appellate counsel were not the attorneys who represented the Association below and who rejected the payment.

. To be clear, the Association would not have been required to release its claim of lien immediately in response to a payment of less than the full amount claimed; but the Kligers made no such demand. Our holding simply confirms that the Association, its property manager, and its attorneys may not reject and refuse to apply a payment, even a partial payment, while the matter is in dispute.