NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

| | |
|---|---|
| ST. CROIX LANE TRUST & M.L. SHAPIRO, TRUSTEE, | ) ) ) |
| Appellant, | ) ) |
| v. | ) Case No: 2D13-3636 ) |
| ST. CROIX AT PELICAN MARSH CONDOMINIUM ASSOCIATION, INC., | ) ) ) |
| Appellee. | ) ) ) |

Opinion filed August 8, 2014.

Appeal from the Circuit Court for Collier
County; Hugh D. Hayes, Judge.

Jeffrey Bluestein of Marc L. Shapiro, P.A.,
Naples, for Appellant.

Todd B. Allen of Geode, Adamczyk &
DeBoest, PLLC, Naples, for Appellee.


WALLACE, Judge.

The owner of a condominium unit appeals a final summary judgment

declaring that no accord and satisfaction occurred when the condominium association

accepted a check that the unit owner tendered in full satisfaction of the association's

disputed claim for past due assessments and other charges. Because the circuit court

erred in relying on section 718.116(3), Florida Statutes (2011), in ruling that an accord and satisfaction did not occur, we reverse the final summary judgment.

## I.  THE FACTUAL AND PROCEDURAL BACKGROUND

St. Croix at Pelican Marsh Condominium Association, Inc. (the Association), filed an action to foreclose its lien on a condominium unit for past due assessments, interest, late fees, costs, and attorney's fees.  The Association obtained a final judgment of foreclosure, and the unit was scheduled for sale.  The unit was subject to a first mortgage, and the Association elected not to bid at the sale.  St. Croix Lane Trust (the Trust) was the successful bidder at the sale.  On March 13, 2012, the clerk of the court issued and recorded a certificate of title in favor of the Trust.

The Trust bid $100 for the property at the sale.  The $100 bid was insufficient to pay the amount of the Association's foreclosure judgment.  On March 21, 2012, the Association's attorney wrote the Trust a letter demanding payment of $36,584.54.  This figure included unpaid quarterly assessments against the unit for several years, accrued interest, late fees, a substantial balance for a delinquent water bill, costs, and attorney's fees.  The Association also demanded payment of the quarterly assessment that fell due on January 1, 2012, the first day of the quarter during which the Trust took title to the unit.  The Trust did not pay the amount demanded, and the Association filed a claim of lien against the unit.  On May 7, 2012, the Association's attorney sent a letter to the Trust demanding payment of $38,586.11, plus interest through the date of payment.

The Trust's attorney responded in writing on May 18, 2012.  The Trust disputed the amount of the Association's claim.  In the Trust's view, its liability to the

Association was limited to its share of the first quarterly assessment for 2012, prorated from March 13, 2012, the date that it took title to the unit. However, the Trust offered to pay the Association $840, the full amount of the first quarterly assessment, to settle the matter. In pertinent part, the letter from the Trust's attorney to the Association's attorney said:

> At worst[,] my client only owes the pro rata first quarter assessment for the period of its ownership. However, in a good faith effort to resolve this matter I have enclosed herewith a check in the amount of $840.00 payable to your Trust Account for the full January 1, 2012 assessment. Be advised and warned, this check is tendered in full and final satisfaction of all claims made against the Trust and the property for the amounts demanded in your May 7, 2012 correspondence. Regardless of intent, negotiation of the enclosed check shall be deemed an acceptance of the offer of settlement made herein, and shall be in full and final satisfaction of all claims against the Trust and the property . . . as more particularly set forth in your May 7, 2012 correspondence.

(Footnotes omitted.)

The parties (or their attorneys) evidently had a history that preceded the current dispute. On May 18, 2012, the Association's attorney responded by e-mail to the Trust's attorney as follows: "We've been through this argument before, so I'm not going to recite it here again. You know our position, and the case law[1] used to support it. I have instructed my staff to apply this as a partial payment once it's received (despite the restrictive endorsement)." In fact, the Association received the Trust's check for $840 and negotiated it.

---

[1]We assume that the "case law" referenced here is Ocean Two Condominium Ass'n v. Kliger, 983 So. 2d 739 (Fla. 3d DCA 2008).

Despite its receipt and retention of the $840 tendered in settlement of its claims, the Association threatened to file an action to foreclose its claim of lien against the Trust's condominium unit. The Trust responded by filing an action against the Association. The Trust's complaint contained two counts. In count one, the Trust sought declaratory relief as follows: (1) an adjudication concerning whether it was obligated to pay the Association for the past due assessments and other amounts claimed; (2) an order discharging the Association's claim of lien against the unit; and (3) an award of attorney's fees and costs. In count two, the Trust sought damages for the loss of the rental value of the unit. The Trust alleged that the declaration of condominium authorized the Association to prohibit the leasing of a unit if the unit owner was delinquent in the payment of assessments when a unit owner submitted an application to lease a unit. The Trust alleged further that the submission of an application to lease the unit would "be futile" under the circumstances.

## II. THE CIRCUIT COURT'S RULING

The facts were essentially undisputed, and the parties filed cross-motions for summary judgment. In June 2013, the circuit court granted the Association's motion for summary judgment as to count one and denied the Trust's motion. In its order, the circuit court determined that the Trust was jointly and severally liable with the previous unit owner for all amounts claimed by the Association through the date of the foreclosure sale, less the $840 payment. The circuit court's ruling was as follows:

> 1. Florida Statutes Section 718.116(1)(a) provides that a parcel owner, regardless of how his or her title to property was acquired, including by purchase at a foreclosure sale, is jointly and severally liable with the previous parcel owner for all unpaid assessments that came

- 4 -

due up to the time of transfer of title. The common law doctrine of merger is inapplicable in this instance.

2. [The Trust] acquired title to the subject property by purchase at a foreclosure sale. Therefore, [the Trust] became jointly and severally liable with the prior owner for unpaid assessments that were due and owing to [the Association] when [the Trust] took title to the subject property, pursuant to Florida Statutes Section 718.116(1)(a).

3. By operation of § 718.116(3), Fla. Stat. [the Association's] acceptance of a payment from [the Trust] as an accord and satisfaction was ineffective to satisfy [the Association's] claims against [the Trust] for amounts in excess of the amount paid.

4. The assessments for which the [Trust] is jointly and severally liable with the previous owner to the [Association] include interest, costs, late fees[,] and attorney's fees.

In July 2013, the circuit court entered a final judgment in accordance with its prior order. The final judgment dismissed count two of the Trust's complaint with prejudice. This appeal followed.

### III. THE TRUST'S ARGUMENTS

On appeal, the Trust raises three arguments. First, the Association's negotiation of the Trust's check that was tendered in full satisfaction of the Association's claims resulted in an accord and satisfaction. Second, the Association's claim for the assessment and other charges that accrued before the Trust acquired title to the unit was extinguished by the common law doctrines of merger and estoppel. Finally, and in the alternative, the Trust's liability to the Association was limited to the past due assessments only, exclusive of interest, late fees, interest, utility expenses, costs, and attorney's fees. We need address only the issue of accord and satisfaction. Our

- 5 -

standard of review is de novo.  Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000).

## IV.  DISCUSSION

Section 673.3111, Florida Statutes (2011), "Accord and satisfaction by use of instrument," provides, in pertinent part, as follows:

> (1) If a person against whom a claim is asserted proves that that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, that the amount of the claim was unliquidated or subject to a bona fide dispute, and that the claimant obtained payment of the instrument, the following subsections apply.

> (2) Unless subsection (3) applies, the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim.

None of the exceptions provided for in the statute are applicable here.  When the Association negotiated the Trust's check that was tendered in full and final satisfaction of the Association's disputed claim, an accord and satisfaction resulted.  See Miller-Dunn Co. v. Green, 16 So. 2d 637, 638 (Fla. 1944); United Auto. Ins. Co. v. Palm Chiropractic Ctr., Inc., 51 So. 3d 506, 509 (Fla. 4th DCA 2010); Martinez v. S. Bayshore Tower, L.L.L.P., 979 So. 2d 1023, 1024 (Fla. 3d DCA 2008).  If the Association did not wish to accept the $840 check in full settlement of its claims in accordance with the Trust's conditional tender, then it should have returned the check instead of negotiating it.  See The Burke Co. v. Hilton Dev. Co., 802 F. Supp. 434, 439 (N.D. Fla. 1992) (applying Florida law).  "Simply put, the [Association] cannot have [its] cake and eat it too."  Id.

The Association argues that section 718.116(3) of the Condominium Act requires a different result. Section 718.116(3) provides as follows:

> Assessments and installments on assessments which are not paid when due bear interest at the rate provided in the declaration, from the due date until paid. The rate may not exceed the rate allowed by law, and, if no rate is provided in the declaration, interest accrues at the rate of 18 percent per year. If provided by the declaration or bylaws, the association may, in addition to such interest, charge an administrative late fee of up to the greater of $25 or 5 percent of each delinquent installment for which the payment is late. Any payment received by an association must be applied first to any interest accrued by the association, then to any administrative late fee, then to any costs and reasonable attorney's fees incurred in collection, and then to the delinquent assessment. <u>The foregoing is applicable notwithstanding any restrictive endorsement, designation, or instruction placed on or accompanying a payment</u>. A late fee is not subject to chapter 687 or s. 718.303(4).

(Emphasis added.) In the Association's reading of the statute, the penultimate sentence of subsection three protects a condominium association against a claim of accord and satisfaction when it negotiates a check tendered in payment of claim for assessments and related charges. We disagree. We interpret the statutory language to mean that the condominium association must apply such payments to amounts due in accordance with the statutory command without regard to any accompanying instructions to the contrary. We do not think that the legislature intended the penultimate sentence of subsection three to amend section 673.3111 tacitly or to otherwise alter the law of accord and satisfaction in favor of condominium associations when they accept payments for assessments and related charges.

The pertinent legislative history confirms our interpretation of the statute. The language in question was added to subsection three of section 718.116 by chapter

91-103, section 9, at 735, Laws of Florida (1991). The staff analyses for the House and Senate explain the purpose of the amendment as follows:

> Subsection (3) [of section 718.116] addresses the late fee which is charged for unpaid assessments. Currently the fee can be the greater of $25 or 5 percent of the assessment. Language is added to provide that the late fee applies to each installment. Currently, the statute provides a formula which determines how payments are to be applied, with payments first applied to interest, then to late fees, then to costs and attorney[']s fees[,] and then to delinquent assessments. <u>This bill would apply this statutory formula even if the check which was tendered contained a restrictive endorsement which provided some other formula for payment</u>.

Fla. H.R. Comm. on Judiciary, CS for HB 1465 (1991) Staff Analysis 12 (Mar. 28, 1991); Fla. S. Comm. on Fin. & Tax, CS for SB 1408 (1991) Staff Analysis 7 (Apr. 19, 1991) (available at Fla. Dep't of State, Fla. State Archives, Tallahassee, Fla.) (emphasis added). Thus the staff analyses confirm that the pertinent language was added to subsection three to invalidate restrictive endorsements that provide a formula for the application of payments other than that set forth in the statute. There is nothing in the staff analyses suggesting that the amendment was intended to make section 673.3111 inapplicable to condominium associations or that the amendment would otherwise alter Florida law concerning accord and satisfaction solely for the benefit of condominium associations.

We recognize that part of the discussion in <u>Ocean Two Condominium Ass'n v. Kliger</u>, 983 So. 2d 739 (Fla. 3d DCA 2008), can be read to interpret section 718.116(3) differently. We think that the Third District reached the correct result in <u>Kliger</u>. However, we do not find its discussion of section 718.116(3) persuasive here for two reasons. First, the monthly maintenance payments for which the unit owners

- 8 -

tendered their payments in <u>Kliger</u> were conceded to be due and were not subject to any dispute. <u>Id.</u> at 741. Here, there was a bona fide dispute about the amounts for which the Trust was liable. This fact is sufficient to distinguish <u>Kliger</u> from the case under review.

Second, it does not appear from the discussion in <u>Kliger</u> that the Third District had the benefit of the pertinent legislative history as an aid to its interpretation of section 718.116(3) when it issued the opinion in that case. We are inclined to believe that if the Third District had considered the legislative history, its discussion of the purpose and effect of the statute might have been different.

Before concluding, we also note that the undisputed nature of the condominium association's claims in <u>Kliger</u> rendered any consideration of the role of the statute in protecting a condominium association from prejudice or jeopardy by acceptance of a partial payment unnecessary to the Third District's decision in that case. In short, the discussion in <u>Kliger</u> on which the Association relies so heavily here in support of an affirmance is only dicta.

## V. CONCLUSION

For the foregoing reasons, we reverse the circuit court's summary judgment order and the final judgment entered in accordance with it. On remand, the circuit court shall enter a partial summary judgment declaring that any obligations of the Trust to the Association for amounts that became due before the Trust acquired title to the property were discharged by an accord and satisfaction. In addition, the partial summary judgment to be entered shall also declare that the Trust is entitled to have the Association's claim of lien against the condominium unit in question cancelled and

vacated.  The Trust's claim for the lost rental value of the unit as asserted in count two of the complaint remains to be resolved on remand.

Reversed and remanded with directions.


DAVIS, C.J., and CRENSHAW, J. Concur.