# Third District Court of Appeal

## State of Florida

Opinion filed December 19, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D17-2469
Lower Tribunal No. 10-22236
_____

**CitiMortgage, Inc.,**
Appellant,

vs.

**Jorge Porter, et al.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Thomas J. Rebull, Judge.

Akerman and Nancy M. Wallace (Tallahassee) and William P. Heller (Fort Lauderdale) and Eric M. Levine (West Palm Beach), for appellant.

The Ticktin Law Group and Kendrick Almaguer (Deerfield Beach); Krinzman Huss & Lubetsky and Cary A. Lubetsky and Lynette Ebeoglu McGuinness; Pila Law Group and Tomas A. Pila, for appellees.

Before ROTHENBERG, C.J., and SALTER and LINDSEY, JJ.

SALTER, J.

CitiMortgage, Inc. ("CitiMortgage"), appeals a final summary judgment in favor of Sun West Mortgage Company, Inc. ("Sun West"), regarding the relative priority of the parties' respective mortgage liens. CitiMortgage's mortgage was recorded before Sun West's reverse mortgage, but a series of suspicious documents and occurrences called that priority into question. Concluding that Sun West "was a bona fide purchaser for value without notice of any alleged irregularities in the public record chain of title," and that CitiMortgage was "in the best position to correct the official records and is the least innocent," the trial court granted Sun West's motion for final summary judgment. For the reasons which follow, we reverse.

I.     Facts; Proceedings in the Circuit Court

     A.     CitiMortgage

In 2005, appellee Jorge Porter ("Porter") executed a promissory note and first mortgage encumbering his residence. The mortgage was duly recorded, as were a later loan modification agreement and various assignments culminating in an assignment to CitiMortgage.

In 2010, CitiMortgage's attorneys at the time, David J. Stern, P.A., filed the circuit court foreclosure action involved in the present appeal, and a lis pendens. A year later, Stern withdrew as counsel and CitiMortgage's present counsel were substituted. But in 2011, two months after Stern's withdrawal, the Stern firm

allegedly executed a "Notice of Voluntary Dismissal with Prejudice and Release of Lis Pendens." The notice did not appear on the electronic docket at that time, but the docket does reflect a voluntary dismissal on June 8, 2012, and the signed notice and release of lis pendens was recorded in the public records on the same date.

And in the interim, on February 6, 2012, a satisfaction of mortgage purportedly executed in October 2009 by one of the interim mortgagees of record (by assignment)—not by CitiMortgage—was recorded in the public records. The borrower and mortgagor, Porter, paid the recording fee for the satisfaction.[1]

On June 26, 2012, CitiMortgage moved to "strike the notice of dismissal recorded on June 8, 2012 or . . . vacate the notice of dismissal." CitiMortgage contended "the notice of dismissal was not authorized by [CitiMortgage] and should not have any prospective application . . . [because] it is clear that the notice of dismissal was improperly recorded, it should be stricken, or in the alternative, vacated by this Court."

On July 10, 2012, the trial court entered an order granting CitiMortgage's motion, providing "[t]he notice of voluntary dismissal recorded on June 8, 2012, shall have no further force or effect." CitiMortgage did not record the trial court's

_____

[1] The purported satisfaction carried an execution and notarization date of October 30, 2009, some five months <u>before</u> CitiMortgage commenced its foreclosure action. The document was not filed for recording by Porter until over two years <u>after</u> that date of execution, and 22 months <u>after</u> the CitiMortgage foreclosure commenced.

order. CitiMortgage claims "[t]he original order disappeared from the court file—which is why it was never recorded and why the record on the appeal needed to be supplemented with a conformed copy."

## B. Sun West; Amended Foreclosure Complaint

In May 2012, Porter's mother applied for a reverse mortgage loan on Porter's residence, which was actually still owned by Porter and the subject of an active foreclosure case. Porter conveyed the residence to his Mother on June 13, 2012. The reverse mortgage loan closed on August 21, 2012, six weeks after the trial court's order vacating the dismissal of CitiMortgage's foreclosure action. The reverse mortgage was recorded in September 2012, and an assignment of that mortgage to Sun West was recorded in November 2012.

In 2014, CitiMortgage amended its foreclosure complaint to add Sun West and the assignor of the mortgage to Sun West as defendants. Sun West's answer and affirmative defenses alleged: (1) Sun West was a bona fide lender for value without notice of CitiMortgage's mortgage lien as of the time the Sun West mortgage closed; (2) CitiMortgage's lien is barred as "between two innocent parties, the one who caused or allowed or could have avoided the loss, must bear responsibility for the loss"; and (3) CitiMortgage is estopped from bringing its claim of priority against Sun West.

4

Sun West moved for summary judgment, based on the recorded satisfaction of CitiMortgage's mortgage among the public records and on CitiMortgage's failure to record the trial court's order vacating the voluntary dismissal and discharging the lis pendens. CitiMortgage opposed the motion, filing an affidavit of a CitiMortgage officer attesting that CitiMortgage had never satisfied or released the Porter mortgage. CitiMortgage also filed an affidavit of the lead general counsel of Nationwide Title Clearing, Inc. ("NTC"), shown in the "Document Prepared By" entries on the recorded satisfaction of the Porter mortgage. NTC's affiant conducted an investigation of the alleged satisfaction of mortgage and concluded that the satisfaction was not in fact "prepared or sent for recording by NTC."[2] The affiant observed that a postal ZIP Code for NTC's address contained an extra digit, a format "which does not exist and could not print out on any of NTC's forms."

CitiMortgage also submitted summary judgment evidence in the form of deposition excerpts from a representative of the Stern law firm, stating that the firm did not prepare the notice of voluntary dismissal. Finally, CitiMortgage filed

---

[2] The NTC counsel and affiant noted, for example, that the supposed satisfaction of mortgage was notarized in Miami-Dade County, though NTC has no physical presence and has not signed documents there, as NTC's authorized agents in Florida are required to sign in the presence of a Pinellas County Notary, where NTC is located.

5

the Miami-Dade Clerk of Court records department receipts indicating that Porter recorded the satisfaction of mortgage himself.

The trial court granted Sun West's motion for final summary judgment, concluding that as between the two parties, CitiMortgage was the "least innocent" and thus required to bear the loss. This appeal followed.

II.    Analysis

We review an order granting a motion for summary judgment de novo. Volusia County. v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000). We consider the summary judgment evidence in the light most favorable to the non-moving party, indulging any reasonable inferences in favor of that party. Rocamonde v. Marshalls of MA, Inc., 56 So. 3d 863, 864 (Fla. 3d DCA 2011).

Sun West contends that the affidavit of the attorney who served as closing agent for the Sun West loan is dispositive. Her affidavit describes her title search and her review of a title commitment from a title insurer. She states that (a) the title insurer did not list the CitiMortgage mortgage on its June 18, 2012, commitment, and (b) no one told her, prior to or during the closing on August 21, 2012, that the satisfaction of the CitiMortgage lien or the dismissal with prejudice and release of the CitiMortgage lis pendens "were incorrect or had been improperly recorded."

6

Also in the record, however, were a number of suspicious entries and occurrences placing Sun West and its originator/underwriter, on notice of irregularities. First, the purported satisfaction of the CitiMortgage lien, dated October 30, 2009, was recorded February 6, 2012, and was not executed by an officer or agent of CitiMortgage. Between the date of the supposed execution (by Mortgage Electronic Registration Systems, Inc., or "MERS") of the satisfaction, and the recordation of the purported satisfaction over two years later, an assignment of the same note and mortgage was recorded. The assignment was dated August 18, 2010, recorded September 14, 2010, supposedly prepared by David J. Stern, Esq., and assigned the note and mortgage from MERS to CitiMortgage. The satisfaction of the mortgage in 2009 is inconsistent with the assignment of the note and mortgage nearly a year later.

Second, when the closing agent referred in her affidavit to "public records," she did not limit the term to "Official Records," used to refer only to a county clerk's register of recorded documents by "O.R. Book and Page." The electronic docket and documents annexed to the docket are also public records. Any review of the docket of the 2010 CitiMortgage foreclosure case would have shown another inconsistency—a motion by CitiMortgage to vacate the voluntary dismissal and release of lis pendens filed only 18 days after it was recorded, and an order on that motion (and thereby reinstating the lis pendens) docketed July 10, 2012.

7

The docket would have further disclosed that David Stern withdrew as CitiMortgage's counsel, and another firm was substituted in Stern's firm's place, two months before his firm supposedly executed the notice of voluntary dismissal and release of lis pendens, and over a year before that notice and release was recorded. It would also have disclosed that substantial prosecution and progress toward foreclosure continued to occur well after the purported satisfaction and voluntary dismissal were executed.

Third, the purported notice of voluntary dismissal dated in March 2011—after the withdrawal of the alleged attorney and firm who signed it—carried no certificate of service indicating service on counsel or delivery to CitiMortgage (which executed an affidavit stating that such a document was never received by CitiMortgage).[3]

Fourth and finally, Porter certainly had knowledge that he was still a defendant in the CitiMortgage foreclosure case, yet apparently never disclosed to his own Mother, or his Mother's lender, that they would be buying their way into a lawsuit if they closed the loan to his Mother in 2012. The loan closing occurred in August 2012, well after the docket entries in the electronic, readily-available online records of the CitiMortgage foreclosure.

---

[3] The purported notice also bears no electronic date/time filing information for filing with the Circuit Court in March 2011; someone simply recorded it in the Official Book fifteen months later (June 2012).

Porter's quitclaim deed to his Mother during the pendency of the foreclosure case and his own personal recordation of the purported satisfaction of mortgage over two years after it was supposedly executed (an act denied in the affidavit of NTC, the entity identified as the preparer) are additional indicia of bad faith on the part of Porter.

This summary judgment evidence creates triable, genuine issues of material fact. In Lloyd v. Chicago Title Insurance Co., 576 So. 2d 310, 311 (Fla. 3d DCA 1990), this Court held that "the recording of a void or forged instrument cannot create legal title or protect those who may claim under it." (Citing McCoy v. Love, 382 So. 2d 647 (Fla. 1997), and three earlier Florida cases). On this record, the single-page notice of voluntary dismissal and release of lis pendens was executed and recorded without authorization by, or notice to, CitiMortgage. Moreover, there was summary judgment evidence that the purported satisfaction of mortgage was not prepared by an employee of NTC and was not signed by an authorized representative of CitiMortgage.

Additional evidence of chicanery, even if by a person or persons as yet unidentified, is found in this record. Someone removed the predecessor trial judge's order of July 10, 2012, from the official court records between the time the trial judge signed it and the time "Order on Motion to Strike" was entered on the electronic docket (but without the usual pdf copy of the order as part of the entry).

9

In addition, an attorney from the Stern law firm testified that, at the date of the purported (and subsequently-stricken) notice of voluntary dismissal and release of lis pendens, the Stern law firm was "downsizing," "winding down," and not doing that kind of work on the dates that the document was signed or recorded. He testified:

> [A]fter March 31st, 2011, the only thing the law firm did was withdraw from cases. We weren't representing any clients. We had no authority to file something like this and to my knowledge no attorney with the firm at that point between March and June and there were only a handful of attorneys maybe five and he was not one of were filing motions to withdraw our cases. [Sic].

Our decision in <u>Lloyd</u>, which itself reversed a summary judgment in favor of a subsequent mortgagee relying on a fraudulent instrument, applies to this record. A factfinder could determine, though we do not decide the point at this juncture, that a fraudulent or "intervening criminal act" induced Sun West's detrimental reliance. <u>Lloyd</u>, 576 So. 2d at 311.

Reversed and remanded for further proceedings.

**ANY POST-OPINION MOTION MUST BE FILED WITHTIN SEVEN DAYS. A RESPONSE TO THE POST-OPINON MOTION MAY BE FILED WITHIN FIVE DAYS THEREAFTER.**