DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

GERALDO PODESTA PEREZ,

Appellant,

v.

BELMONT AT RYALS CHASE CONDOMINIUM ASSOCIATION,
INC., and WEBB REALTY CONSULTANTS, INC.,

Appellees.

No. 2D2023-0872

_____

September 25, 2024

Appeal from the Circuit Court for Pasco County; Kemba Lewis, Judge.

Brian J. Lee of Morgan & Morgan, Jacksonville, for Appellant.

Jennifer A. Karr of Boyd & Jenerette, P.A., Maitland, and Kansas R. Gooden of Boyd & Jenerette, P.A., Miami; and Kevin D. Franz of Boyd & Jenerette, P.A., Boca Raton (substituted as counsel of record), for Appellees.

SLEET, Chief Judge.

Geraldo Perez challenges the trial court's final summary judgment entered in favor of Belmont at Ryals Chase Condominium Association and Webb Realty Consultants in Perez's negligence action. Perez filed suit against Belmont and Webb after he sustained injuries by falling on

loose floor tiles inside a unit owned by Belmont and maintained by Webb. On appeal, Perez argues that the trial court misinterpreted Florida law in granting summary judgment and that Belmont and Webb's continuing duty to maintain the flooring was not absolved by the fact that Perez knew of the condition or that it was open and obvious. Because we conclude that the trial court erred in determining Belmont and Webb owed no duty to Perez, we reverse and remand for further proceedings.

In June 2018, Perez began residing in the apartment he rented from Belmont. Pursuant to the terms of the lease, Belmont, as the landlord, was responsible for the maintenance and repairs of "foundations, floors, structural components," and other areas. And Perez, as the tenant, could "not make any alterations or improvements to the [unit] without first obtaining [Belmont's] written consent to the alteration or improvement." Over the period of time that Perez rented the unit, the floor tiles inside the entrance became loose. As this was the sole entrance to the unit, Perez had to walk through the area with loose tiles to access his unit. On two occasions, Perez's wife made complaints about the loose floor tiles to the owner of Webb, the property management company for Belmont, and to the maintenance supervisor for Belmont. Thereafter, on April 10, 2019, Perez fell on the loose floor tiles.

Perez sued Belmont and Webb alleging negligent failure to maintain the floor tiles. Belmont and Webb filed a motion for summary judgment arguing that they were entitled to judgment as a matter of law because "the alleged dangerous condition at issue in this action was open and obvious." The trial court granted the motion, finding that Belmont and Webb's continuing duty to exercise reasonable care in repairing

dangerous conditions was "limited to conditions that were inherently unsafe or dangerous that were not readily apparent to [Perez]" and that because Perez knew of the dangerous flooring conditions prior to his fall, Belmont and Webb did not owe a duty to Perez.

On appeal, Perez argues that the trial court erred in granting summary judgment because it misinterpreted Florida law in finding that Belmont and Webb's continuing duty to maintain the flooring was absolved by the fact that Perez knew of the condition or that it was open and obvious. We agree.

We review a trial court's granting of summary judgment de novo. *Volusia County v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000); *Sanders Farm of Ocala, Inc. v. Bay Area Truck Sales, Inc.*, 235 So. 3d 1010, 1012 (Fla. 2d DCA 2017). Pursuant to Florida Rule of Civil Procedure 1.510(a), the trial court should grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Here, Perez does not argue that there were disputed issues of material fact. Accordingly, the question before this court is whether Belmont and Webb are entitled to summary judgment as a matter of law.

A landlord's duty to its residential tenant can be properly divided into a prepossession duty and postpossession duty. Before allowing a tenant to take possession of the residence, a landlord "has a duty to reasonably inspect the premises . . . and to make the repairs necessary to transfer a reasonably safe dwelling unit to the tenant unless defects are waived by the tenant." *Mansur v. Eubanks*, 401 So. 2d 1328, 1330 (Fla. 1981). "After the tenant takes possession, the landlord has a continuing duty to exercise reasonable care to repair dangerous defective conditions upon notice of their existence by the tenant, unless waived by

3

the tenant." *Id.*; *see also* § 83.51(1), Fla. Stat. (2021). At issue in this case is the landlord's postpossession duty.

Here, Perez alleged that there were loose floor tiles inside the front door of his residence and that notice of the condition was provided to Belmont and Webb. Such loose tiles can be considered dangerous because they were located at the sole entryway to the unit, increasing the likelihood of injury due to Perez's inability to enter the unit through another safe entryway. Because the condition was dangerous and Perez satisfied his obligation to provide notice to the landlord, Belmont and Webb had a duty to repair the tiles.

However, the trial court incorrectly determined that Belmont and Webb did not owe a duty to Perez because the continuing duty to repair "was limited to conditions that were inherently unsafe or dangerous conditions that were not readily apparent to the tenant." In reaching this conclusion, the trial court relied on *Youngblood v. Pasadena at Pembroke Lakes South, Ltd.*, 882 So. 2d 1097 (Fla. 4th DCA 2004). However, such reliance was misplaced as *Youngblood* is not instructive to the issue of a landlord's postpossession duty to a tenant such as Perez who has notified the landlord of what arguably is a dangerous defective condition within the leased premises.

In *Youngblood*, a tenant was injured when she attempted to support herself with a towel rack while exiting a shower. Youngblood suffered injuries and alleged that the landlord should have known tenants would use the towel rack as support when exiting the shower and that the loose and unsecured condition of the rack "created a dangerous and unsafe condition to users of the bathroom." *Id.* at 1097-98. Notably, Youngblood had never notified her landlord of the loose towel rack. Under those facts, the Fourth District concluded that the

4

"loose towel rack [wa]s not a 'dangerous defective condition' that would obligate the landlord to make repairs." *Id.* at 1098. In reaching its conclusion, the Fourth District acknowledged the landlord's postpossession duty established in *Mansur* but then quoted *Menendez v. The Palms West Condominium Ass'n*, 736 So. 2d 58, 61 (Fla. 1st DCA 1999), and limited the postpossession duty "to conditions that are inherently unsafe or dangerous conditions that are not readily apparent to the tenant." *Youngblood*, 882 So. 2d at 1098.

However, *Menendez* did not address the landlord's postpossession duty at issue in this case. Rather, it addressed the prepossession duty to make repairs necessary to transfer a reasonably safe unit to the tenant. Specifically, in *Menendez*, the tenant alleged that his landlord was negligent in failing "to install a viewing device in the front door of an apartment to protect the tenant from an attack by an unknown assailant" and that the landlord failed to make necessary repairs to the premises. *Menendez*, 736 So. 2d at 59. The First District explained that the landlord's prepossession duty to repair defects so the residential unit is reasonably safe for occupancy "is limited, however, to conditions that are inherently unsafe or dangerous conditions that are not readily apparent to the tenant."[1] *Id.* at 61. Ultimately, it "conclude[d] that the absence of a doorscope was not a defect or dangerous condition," was "not inherently dangerous," and "was not a hidden or concealed condition." *Id.* at 61-62.

*Youngblood* inexplicably stretches *Menendez's* limitation of inherently unsafe and readily apparent dangers to postoccupancy,

---

[1] Although the legal basis upon which *Menendez* relied in creating this limitation is unclear, because this case does not concern a prepossession duty, we decline to address the First District's limitation to a landlord's prepossession duty.

contrary to *Mansur's* clear holding as to the landlord's duty "[a]fter the tenant takes possession." *Mansur*, 401 So. 2d at 1330. To be clear, any limitation upon landlords such as Belmont and Webb to repair "conditions that are inherently unsafe or dangerous conditions that are not readily apparent to the tenant" does not apply to a tenant such as Perez who gave specific notice of the dangerous condition to Belmont and Webb. *See Youngblood*, 882 So. 2d at 1098 (quoting *Menendez*, 736 So. 2d at 61).

To require a tenant to provide notice to the landlord of dangerous defective conditions in order to trigger the landlord's continuing duty to repair but then to discharge the landlord's duty because of the tenant's knowledge of the dangerous condition would completely insulate the landlord from liability. *See Mansur*, 401 So. 2d at 1330 ("We do not believe there are sufficient reasons to continue to completely insulate the landlord from liability. We live in an age when the complexities of housing construction place the landlord in much better position than the tenant to guard against dangerous conditions."). Accordingly, within this context, we conclude that a landlord's duty after possession of a residence by the tenant, is only "a continuing duty to exercise reasonable care to repair dangerous defective conditions upon notice of their existence by the tenant, unless waived by the tenant." *Id.*

Here, the loose floor tiles at the entryway of the unit were a dangerous condition, Perez's wife twice notified Belmont and Webb of the loose tiles prior to his fall, and this notice of the defective floor tiles could never be mistaken as a waiver. Upon receiving notice of the dangerous condition, Belmont and Webb had a continuing duty to repair the tiles.[2]

---

[2] We note that pursuant to the lease agreement, floor maintenance and repairs were the responsibility of the landlord, and Perez, as the

6

Accordingly, the trial court erred in determining that Belmont and Webb owed no duty to Perez and in entering final summary judgment. Therefore, we reverse and remand for further proceedings.

Reversed and remanded.

LaROSE and MORRIS, JJ., Concur.

———————————————

Opinion subject to revision prior to official publication.

---

tenant, could "not make any alterations or improvements to the [unit] without first obtaining [Belmont's] written consent to the alteration or improvement."  Such a provision would include performing repairs to the floor tiles.  Thus, Perez was not in a better position than Belmont and Webb to take precautions or correct the condition.  Rather, it was Belmont and Webb's sole responsibility to rectify and repair it.